UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEN GAMBOA, et al.,

              Plaintiffs,           Case No. 2:18-cv-10106

v.                           HONORABLE DENISE PAGE HOOD

FORD MOTOR COMPANY, et al.,   MAGISTRATE ELIZABETH A. STAFFORD

            Defendants.     **ORAL ARGUMENT REQUESTED**

_____/

**DEFENDANT FORD MOTOR COMPANY'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6), OR, ALTERNATIVELY, TO STRIKE ALLEGATIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(F)**

Defendant Ford Motor Company, by its attorneys, moves the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Consolidated Class Action Complaint ("CCAC"), or, alternatively, to strike allegations in the CCAC pursuant to Federal Rule of Civil Procedure 12(f). In support, Ford relies on the accompanying brief and attached exhibits.

On May 31, 2019, pursuant to E.D. Mich. LR 7.1(a), the undersigned counsel communicated with opposing counsel through phone and email, explained the basis for the motion, and sought concurrence in the relief requested. Plaintiffs' counsel expressly declined concurrence.

WHEREFORE, Ford respectfully requests that the Court grant its motion and

dismiss Plaintiffs' Consolidated Class Action Complaint with prejudice pursuant to

Rule 12(b), or, alternatively, strike allegations pursuant to Rule 12(f).


Respectfully submitted,

By:  /s/ Joel A. Dewey                    By:  /s/ Stephanie A. Douglas
    Joel A. Dewey                            Patrick G. Seyferth (P47575)
    Jeffrey M. Yeatman                       Stephanie A. Douglas (P70272)
    DLA PIPER LLP (US)                       BUSH SEYFERTH & PAIGE PLLC
    6225 Smith Avenue                        3001 W. Big Beaver Rd., Ste. 600
    Baltimore, Maryland 21209                Troy, MI 48084
    (410) 580-4135                           (248) 822-7800
    joel.dewey@dlapiper.com                  seyferth@bsplaw.com
    jeffrey.yeatman@dlapiper.com             douglas@bsplaw.com

*Attorneys for Defendant Ford Motor Company*

Dated: May 31, 2019

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEN GAMBOA, et al.,

       Plaintiffs,           Case No. 2:18-cv-10106

v.                      HONORABLE DENISE PAGE HOOD

FORD MOTOR COMPANY, et al.,   MAGISTRATE ELIZABETH A. STAFFORD

       Defendants.
_____/

**BRIEF IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION
COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL
PROCEDURE 12(B)(6), OR, ALTERNATIVELY, TO STRIKE
ALLEGATIONS PURSUANT TO FEDERAL RULE OF
<u>CIVIL PROCEDURE 12(F)</u>**

## STATEMENT OF ISSUES PRESENTED

1.    Whether the Clean Air Act (42 U.S.C. § 7543(a)) expressly preempts the private Plaintiffs' claims where, despite their attempt to evade preemption by relabeling their claims as "misrepresentation" or "deceptive conduct," the claims are fundamentally predicated on, and seek to recover for, Ford's sale of new motor vehicles that purportedly do not comply with federal emission standards through the use of "defeat devices" (a phrase defined exclusively by federal law)?

2.    Whether Plaintiffs' federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims should be dismissed where they lack both statutory standing and sufficiently particular allegations that Ford intentionally engaged in the requisite conduct?

3.    Whether Plaintiffs' claims, to the extent they are based on alleged affirmative fraudulent misrepresentations related to the "environmentally friendly" nature of the subject vehicles, are premised on non-actionable puffery in the form of opinions and promises that cannot form the basis for a fraud claim?

4.    Whether the individual named Plaintiffs lack standing to pursue claims under the law of states where none of them reside because standing is not dispensed in gross and the decision can be made before class certification?

5.      Whether consumer-protection claims on behalf of Alabama, Georgia, Mississippi, Montana, Ohio, and South Carolina putative state subclasses fail because these states only allow recovery through individual actions?

6.      Whether the California, Illinois, and Texas omission-based fraud claims fail because no California, Illinois, or Texas plaintiff alleges whether or when she was exposed to a deceptive statement from Ford that omitted material information, and whether the Wisconsin omission-based consumer-protection claim fails without a Wisconsin plaintiff and the general ability to premise such a claim on alleged omissions?

7.      Whether the economic loss doctrine bars a Pennsylvania Unfair Trade Practices and Consumer Protection Law claim for economic losses only?

8.      Whether the Michigan Consumer Protection Act claim fails without a Michigan named plaintiff, and because motor-vehicle sales are exempt from the act?

9.      Whether the Colorado Consumer Protection Act claim fails because there are no Colorado named plaintiffs, no plausible allegations of a threatened future injury, and the act itself bars the requested money damages in a class action?

10.      Whether the Consolidated Class Action Complaint contains no plaintiffs who live in Kentucky or Idaho or allegations of contractual privity sufficient to sustain claims under the Kentucky Consumer Protection Act or the Idaho Consumer Protection Act?

11.     Whether the California and Illinois breach-of-contract claims fail because the Consolidated Class Action Complaint lacks sufficient allegations of a valid contract between any named Plaintiffs from these states and with Ford, or of a specific provision of a contract allegedly breached by Ford?

12.     Whether the Louisiana claims fail because there are no Louisiana named plaintiffs, and the claims themselves are preempted under the Louisiana Products Liability Act?

13.     Whether the Court should dismiss punitive-damages requests based on alleged harm in states where no named Plaintiff lives, and under consumer-fraud statutes that do not allow for punitive damages?

14.     Whether the Court should dismiss a two-paragraph Massachusetts claim as patently insufficient, and eight other claims that are asserted "for notice purposes only" as mere placeholders?

15.     Whether the Court should strike all references to alleged failure to comply with federal emissions standards as immaterial and impertinent under Federal Rule of Civil Procedure 12(f)—and, for the *Gamboa* plaintiffs, judicially estopped—where Plaintiffs' reliance on alleged violations of federal statutes to support their consumer-fraud claims would render those claims preempted?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

**Argument I**        **Plaintiffs' Claims are Preempted by the CAA and Insufficient under the RICO statute.**

Clean Air Act, 42 U.S.C. § 7543(a)

*Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979) (holding Section 209's broad preemptive sweep serves Congress's purpose of avoiding an anarchic patchwork of federal and state regulatory programs, a prospect which threatened to create nightmares for the manufacturers).

*Puerto Rico v. Franklin-California Tax-Free Trust*, 136 S. Ct. 1938 (2016) (rejecting presumption against preemption in express preemption cases).

*In re Duramax Diesel Litig.*, 17-CV-11661, 2018 WL 949856 (E.D. Mich. Feb. 20, 2018) (finding if a plaintiff's state law claims represent veiled attempts to establish a standard relating to the control of emissions, they are expressly preempted).

*Counts v. General Motors, LLC*, 237 F. Supp. 3d 572 (E.D. Mich. 2017) (finding to the extent the plaintiffs suing a defendant for manufacturing a vehicle that emits more than a certain amount of NOx or particulate emissions in violation of EPA regulations or that is not equipped with properly functioning and federally required emission-control technology, their claims are pre-empted by the CAA).

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*, 264 F. Supp. 3d 1040 (N.D. Cal. 2017) (explaining Section 209(a) keeps States from interfering with EPA investigations and enforcement actions based on fraud or deceit against the EPA).

*Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238 (1984) (holding conflict preemption exists to the extent that state law actually conflicts with federal law, that is, when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress).

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001) (holding claims amounting to fraud-on-the-FDA are impliedly preempted by the Food, Drug, and Cosmetic Act because such claims conflict with the federal statutory scheme that empowers the FDA to punish and deter fraud against the Agency).

*Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) (holding that "distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance")

**Argument II**    **The CCAC should be Dismissed to the Extent it is Based on Alleged Affirmative Misrepresentations.**

*Gamboa v. Ford Motor Company, et al.*, 2:18-cv-10106, Dkt. 69 (Hood, J.) (ordering that that the *Gamboa* Plaintiffs are "not permitted to proceed with their claims that pertain to [Ford's] alleged affirmative misrepresentations").

**Argument III(A)**    **Unpresented Claims must be Dismissed**

*Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576 (6th Cir. 2016) (quoting *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998) for the proposition that "potential class representatives … cannot acquire [] standing merely by virtue of bringing a class action").

*In Re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642 (E.D. Mich. 2011) (finding "standing issues should be resolved in the first instance" because deferring them allows "named plaintiffs in a proposed class action… to embark on lengthy class discovery with respect to injuries in potentially every state in the Union").

**Argument III(B)**    **Statutory Class-Action Bars Require Dismissal of Six State Claims.**

Ala. Code § 8-19-10(f)

Ga. Code § 10-1-399(a)

Miss. Code § 75-24-15(4)

Mont. Code § 30-14-133(1)

Ohio Rev. Code § 1345.09(A)

S.C. Code § 39-5-140(a)

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010) (holding that Rule 23 does not preempt statutory state class action bars because "federal rules cannot displace a state's definition of its own rights or remedies").

**Argument III(C)**     **Plaintiffs' California, Illinois, Texas, and Wisconsin Omission-Based Claims Fail.**

*Schiesser v. Ford Motor Co.*, 16 C 730, 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) (dismissing omission-based claim where plaintiff failed to identify a Ford communication which allegedly omitted material information).

*Beck v. FCA US LLC*, 273 F. Supp. 3d 735 (E.D. Mich. 2017) (applying California law to hold that fraud-by-omission claims require a showing that alleged omissions that were either "contrary to a representation actually made by the defendant" or something "the defendant was obliged to disclose").

*Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965 (N.D. Tex. 2014) (same holding as *Beck*, *supra*)

*In re Duramax Diesel Litig.*, 17-cv-11661, 2018 WL 3647047 (E.D. Mich. Aug. 1, 2018) (applying Wisconsin law) (same holding as *Beck*, *supra*).


**Argument III(D)**     **The Economic Loss Doctrine Bars the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Claim.**

*Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671, 678-79 (3d Cir. 2002) (holding that the economic loss doctrine applies to UTPCPL claims).

**Argument III(E)**     **Vehicle Sales are Highly Regulated Activities that are Exempt from the Michigan Consumer Protection Act ("MCPA").**

Mich. Comp. Laws § 445.904(1)

*Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015) (exempting motor-vehicle sales from the MCPA).

**Argument III(F)**        **The Colorado Consumer Protection Act ("CCPA")**
                           **Prohibits Claims for Money Damages.**

Colo. Rev. Stat. § 6-1-113(2)

**Argument III(G)**        **Plaintiffs do not Allege the Contractual Privity Required**
                           **for the Idaho and Kentucky Consumer-Protection**
                           **Claims.**

*In re Duramax Diesel Litig.*, 17-cv-11661, 2018 WL 3647047 (E.D. Mich. Aug. 1,
2018) (dismissing KCPA and ICPA claims for lack of direct contractual privity).

**Argument III(H)**        **Plaintiffs' California and Illinois Breach-of-Contract**
                           **Claims Fail because they have not Alleged the Existence**
                           **of a Contract.**

*Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289 (C.D. Cal. 2015) (finding
a plaintiff attempting to plead a breach of contract action, must plausible allege the
existence of a contract, her performance or excuse for nonperformance, defendant's
breach, and resulting damage).

*Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F. Supp. 347 (N.D. Ill.
1996) (dismissing breach of contract claim for lack of "sufficient allegations
describing the terms of the alleged contract").

**Argument III(I)**        **Plaintiffs' Louisiana Claims are Preempted Under**
                           **Louisiana Law.**

La. Rev. Stat. § 9:2800.52

*In re Duramax Diesel Litig.*, 17-cv-11661, 2018 WL 3647047 (E.D. Mich. Aug. 1,
2018) (dismissing plaintiffs' LUPTA and common-law fraudulent concealment
claims as barred by the LPLA's exclusivity provision).

**Argument III(J)**        **Several Punitive-Damages Claims are Barred or**
                           **Excluded.**

A.C.A. § 4-88-113(f)

Mich. Comp. Laws § 445.911(2)

Minn. Stat. § 325D.44

N.M. Stat. § 57-12-10

*Philip Morris U.S.A. v. Williams*, 549 U.S. 346 (2007) (dismissing claims for punitive damages and holding a jury cannot "use a punitive damages verdict to punish" a defendant for "harms it is alleged to have visited on nonparties").

*In re Duramax Diesel Litig.*, 17-cv-11661, 2018 WL 3647047 (E.D. Mich. Aug. 1, 2018) (striking punitive damages on plaintiffs' UTPCPL claim).

*Stottlemire v. Caliber Home Loans, Inc.*, 2017 WL 282419 (N.D. W. Va. Jan. 20, 2017) (holding "[p]unitive damages are not available" under the WVCCPA).

**Argument IV        Plaintiffs' "Placeholder" Claims Should be Dismissed.**

*Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019) (holding "[p]lace-holder [c]laims do not assert any claims at all" and "must be dismissed").

**Argument V        The Court should Strike References to Compliance with Federal Emissions Standards.**

*Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760 (E.D. Mich. 2014) (holding "immaterial" matter "has no essential or important relationship to [a] claim"; "impertinent" matter is "not necessary to the issues in question").

*Turner v. French*, No. 07-14694, 2009 WL 103977 (E.D. Mich. Jan. 14, 2009) (holding a Rule 12(f) motion is "properly granted where the amended complaint contains allegations of claims previously dismissed by the district court").

*Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) (holding that judicial estoppel bars "a position that is contrary to" previous position adopted by the court).

# **TABLE OF CONTENTS**

STATEMENT OF ISSUES PRESENTED................................................. iv

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. vii

TABLE OF CONTENTS..................................................................... xii

INDEX OF AUTHORITIES................................................................. xiv

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND ...................................................................3

    A.    The Comprehensive Federal Regulatory Scheme .................................3

    B.    The CCAC ...............................................................................3

LEGAL STANDARD...........................................................................6

ARGUMENT ...................................................................................6

  I.    Plaintiffs' Claims are Preempted by the CAA and Insufficient under the RICO Statute...................................................................................6

  II.    The CCAC Should be Dismissed to the Extent it is Based on Alleged Affirmative Misrepresentations. .........................................................8

  III.    Several of Plaintiffs' State Law Claims Fail as a Matter of Law...............9

    A.    Unrepresented Claims Must be Dismissed............................................10

    B.    Statutory Class-Action Bars Require Dismissal of Six State Claims. ..11

    C.    Plaintiffs' California, Illinois, Texas, and Wisconsin Omission-Based Claims Fail..................................................................................12

    D.    The Economic Loss Doctrine Bars the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Claim..............14

    E.    Vehicle Sales are Highly Regulated Activities that are Exempt from the Michigan Consumer Protection Act ("MCPA"). ..................................15

    F.    The Colorado Consumer Protection Act ("CCPA") Prohibits Claims for Money Damages. ....................................................................16

    G.    Plaintiffs do not Allege the Contractual Privity Required for the Idaho and Kentucky Consumer-Protection Claims. ......................................16

    H.    Plaintiffs' California and Illinois Breach-of-Contract Claims Fail because they have not Alleged the Existence of a Contract.................17

    I.    Plaintiffs' Louisiana Claims are Preempted under Louisiana Law..........19

    J.    Several Punitive-Damages Claims are Barred or Excluded.....................20

IV.     Plaintiffs' "Placeholder" Claims should be Dismissed. ...........................22

V.      The Court should Strike References to Compliance with Federal
        Emissions Standards. ..................................................................................23

CONCLUSION ........................................................................................................25

# INDEX OF AUTHORITIES

## Cases

*Aetna Health Inc. v. Davila*,
  542 U.S. 200 (2004) ...................................................................................8

*Alvarado v. Aurora Loan Servs.*, LLC,
  2012 WL 4475330 (C.D. Cal. Sept. 20, 2012) ...................................................19

*Am. Express Co. v. Lipscomb*,
  1981 WL 40529 (E.D. Mich. Jan. 12, 1981)......................................................20

*American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*,
  NO. 03 C 9421, 2004 WL 3363844 (N.D. Ill. Dec 28, 2004) ............................17

*Andrus v. Estrada*,
  39 Cal. App. 4th 1030 (Cal. Ct. App. 1995) .......................................................18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................23

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
  2010 WL 4193076 (D. Minn. Oct. 7, 2010) ......................................................21

*Baker v. Great N. Energy, Inc.*,
  64 F. Supp. 3d 965 (N.D. Tex. 2014) ...............................................................12

*Barnes v. Convention & Show Servs., Inc.*,
  No. 12-cv-13770, 2013 WL 2467920 (E.D. Mich. June 7, 2013) .....................23

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017).............................................................12

*Bennett v. Bumble Bee Foods, LLC*,
  2014 WL 11515509 (W.D. Ark. Oct. 8, 2014) ...................................................20

*Bolus v. Nationwide Prop. & Cas. Co.*,
  No. 3:16-cv-00753, 2018 WL 1474669 (M.D. Pa. Mar. 26, 2018)....................14

*Bowser v. Bogdanovic*,
  No. 08-cv-847, 2010 WL 1462548 (M.D. Pa. Apr. 9, 2010) .............................23

*Bridgeport Music, Inc. v. Diamond Time, Ltd.*,
  371 F.3d 883 (6th Cir. 2004)...............................................................................12

*Browning v. Levy*,
  283 F.3d 761 (6th Cir. 2002)...............................................................................25

*Buchwald v. University of New Mexico School of Medicine*,
  159 F.3d 487 (10th Cir. 1998) ...............................................................16

*Butnick v. GMC*,
  472 F. App'x 80 (2d Cir. 2012) .............................................................7

*Canadian Ingersoll-Rand Co. v. D. Loveman & Sons, Inc.*,
  227 F. Supp. 829 (N.D. Ohio 1964)......................................................23

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...............................................18

*Davis v. Fed. Elec. Comm'n*,
  554 U.S. 724 (2008) ..............................................................................10

*Dixon v. Nw. Mut.*,
  146 A.3d 780 (Pa. Super. Ct. 2016) ....................................................15

*Doe v. Cin-Lan, Inc.*,
  No. 08-12719, 2009 WL 1508367 (E.D. Mich. May 29, 2009) ..........23

*Dollens v. Wells Fargo Bank, N.A.*,
  356 P.3d 531 (N.M. Ct. App. 2015)......................................................21

*Fallick v. Nationwide Mut. Ins. Co.*,
  162 F.3d 410 (6th Cir. 1998)................................................................10

*Fejzulai v. Sam's West, Inc.*,
  205 F. Supp. 3d 723 (D.S.C. 2016)......................................................12

*Friedman v. Dollar Thrifty Auto. Grp., Inc.*,
  2015 WL 4036319 (D. Colo. July 1, 2015) .........................................16

*Goudy v. Yamaha Motor Corp.*,
  782 N.W.2d 114 (Wisc. Ct. App. 2010) ..............................................14

*Harris v. Am. Postal Workers Union*,
  198 F.3d 245 (6th Cir. 1999)...............................................................18

*Herman v. Bridgewater Park Apartments*,
  2016 WL 826050 (E.D. Mich. Mar. 3, 2016) ......................................18

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013)..............................................................................10

*Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*,
  947 F. Supp. 347 (N.D. Ill. 1996) .......................................................19

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) .................................................12

*In re Duramax Diesel Litig.*,
    17-cv-11661, 2018 WL 3647047 (E.D. Mich. Aug. 1, 2018) .......... 14, 17, 19, 21

*In re Gen. Motors LLC Ignition Switch Litig.*,
    14-MD-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016)...................19

*In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*,
    2004 WL 909741 (D. Minn. Apr. 28, 2004)........................................................21

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    350 F. Supp. 2d 160 (D. Me. 2004) ....................................................................22

*In Re Packaged Ice Antitrust Litig.*,
    779 F. Supp. 2d 642 (E.D. Mich. 2011)..............................................................10

*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014).................................................................11

*In re TD Bank, N.A.*,
    150 F. Supp. 3d 593 (D.S.C. 2015).....................................................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*,
    264 F. Supp. 3d 1040 (N.D. Cal. 2017) ................................................................7

*Jackson v. General Motors Corp.*,
    770 F. Supp. 2d 570 (S.D.N.Y. 2011)...................................................................7

*Jimenez v. Ford Motor Credit Co.*,
    2015 WL 9318913 (Mich. Ct. App. Dec. 22, 2015) ...........................................15

*Keaton v. G.C. Williams Funeral Home, Inc.*,
    436 S.W.3d 538 (Ky. Ct. App. 2013) .................................................................16

*Kelly v. Worth Holdings, LLC*,
    2017 WL 4156186 (N.D. Cal. Sept. 18, 2017) ...................................................18

*Lindsley v. Am. Honda Motor Co., Inc.*,
    2017 WL 2930962 (E.D. Pa. July 7, 2017)..........................................................21

*Liss v. Lewiston-Richards, Inc.*,
    478 Mich. 203, 732 N.W.2d 514 (2007)..............................................................15

*Llewellyn-Jones v. Metro Prop. Grp., LLC*,
    22 F. Supp. 3d 760 (E.D. Mich. 2014).................................................................23

*Lockey v. CMRE Fin. Servs., Inc.*,
    2011 WL 2971085 (S.D. Miss. Jul. 20, 2011) .....................................................12

*Longest v. Green Tree Servicing LLC*,
   74 F. Supp. 3d 1289 (C.D. Cal. 2015) ...................................................17

*Malloy v. Watchtower Bible and Tract Socy.*,
   17-cv-10635, 2017 WL 6539056 (E.D. Mich. Dec. 21, 2017) (Hood, J.)...........6

*Matanky v. Gen. Motors LLC*,
   18-10601, 2019 WL 1430114 (E.D. Mich. Mar. 29, 2019)......................... 15, 16

*McLelland v. United Wisconsin Life Ins. Co.*,
   980 P.2d 86 (N.M. Ct. App. 1999).........................................................21

*McVicar v. Goodman Glob., Inc.*,
   1 F. Supp. 3d 1044 (C.D. Cal. 2014) ....................................................17

*Nowicki-Hockey v. Bank of Am., N.A.*,
   593 F. App'x 420 (6th Cir. 2014) .........................................................21

*Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*,
   783 F.3d 1045 (6th Cir. 2015) .............................................................23

*Patrick v. PHH Mortg. Corp.*,
   937 F. Supp. 2d 773 (N.D. W. Va. 2013) ..............................................22

*Philip Morris U.S.A. v. Williams*,
   549 U.S. 346 (2007)..........................................................................20

*Quicken Loans, Inc. v. Brown*,
   777 S.E.2d 581 (W. Va. 2014).............................................................22

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
   2016 WL 9775018 (E.D. Mich. Oct. 21, 2016)..................................15

*Sarantopoulas v. Bank of Am., N.A.*,
   2012 WL 4761900 (N.D. Cal. Oct. 5, 2012).......................................22

*Schiesser v. Ford Motor Co.*,
   16 C 730, 2017 WL 1283499 (N.D. Ill. Apr. 6, 2017) .........................13

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.*,
   559 U.S. 393 (2010)................................................................... 11, 12

*Sierra Petroleum Co. v. Beaudry Oil & Serv., Inc.*,
   2011 WL 13199285 (D. Minn. Mar. 7, 2011) ....................................21

*Simchon v. Highgate Hotels, LP*,
   No. 3:15-CV-01434, 2016 WL 6595918 (M.D. Pa. Nov. 7, 2016)....................15

*Sims v. State Farm Mut. Auto. Ins. Co.*,
   2013 WL 12178135 (E.D. Ark. Sept. 18, 2013)................................20

*Soehnlen v. Fleet Owners Ins. Fund*,
    844 F.3d 576 (6th Cir. 2016)................................................................10

*Spector v. Mondelez Intl., Inc.*,
    178 F. Supp. 3d 657 (N.D. Ill. 2016) ..................................................12

*Spizizen v. National City Corp.*,
    No. 09-11713, 2010 WL 419993 (E.D. Mich. Feb. 1, 2010) ...............24

*Stottlemire v. Caliber Home Loans, Inc.*,
    2017 WL 282419 (N.D. W. Va. Jan. 20, 2017)...................................22

*Tait v. BSH Home Appliances Corp.*,
    2011 WL 1832941 (C.D. Cal. May 12, 2011) ....................................11

*Taylor v. McNichols*,
    243 P.3d 642 (Idaho 2010)..................................................................17

*TCG Detroit v. City of Dearborn*,
    977 F. Supp. 836 (E.D. Mich. 1997)...................................................24

*Tietsworth v. Harley-Davidson, Inc.*,
    677 N.W.2d 233 (Wisc. 2004) ...........................................................14

*Town of Chester, N.Y. v. Laroe Estates, Inc.*,
    137 S. Ct. 1645, 198 L. Ed. 2d 64 (2017). .........................................10

*Turner v. French*,
    No. 07-14694, 2009 WL 103977 (E.D. Mich. Jan. 14, 2009) ............24

*Werwinski v. Ford Motor Co.*,
    286 F.3d 661 (3d Cir. 2002)................................................................14

*West Lumber, LLC v. Burke-Parsons-Bowlby, Corp.*,
    2011 WL 144926 (E.D. Tenn. 2011) ..................................................24

*Western Commc'n Corp. v. Barnick*,
    No. 18-cv-10437, 2018 WL 2717781 (E.D. Mich. June 6, 2018) ......24

*Williams v. Scottrade, Inc.*,
    No. 06-10677, 2006 WL 2077588 (E.D. Mich. July 24, 2006)...........13

*Wozniak v. Ford Motor Co.*,
    No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019)......22

## Statutes

42 U.S.C. § 7543(a) ................................................................................ iv

A.C.A. § 4-88-113(f)...............................................................................20

Colo. Rev. Stat. § 6-1-113(2) ...................................................................16

KRS 367.220(1) .........................................................................................16

La. Rev. Stat. § 9:2800.52 .........................................................................19

MCL § 445.904(1) .....................................................................................15

MCL § 445.911(2) .....................................................................................21

Minn. Stat. § 325D.44 ...............................................................................21

Minn. Stat. § 325F.69 ...............................................................................21

Miss. Code § 75-24-15(2) .........................................................................12

N.M. Stat. § 57-12-10 ...............................................................................21

W.Va. Code §46A-2-125 ...........................................................................22

## Rules

Fed. R. Civ. P. 12(b) ...................................................................................6

Fed. R. Civ. P. 12(f) ..................................................................................23

Fed. R. Civ. P. 23 ......................................................................................11

## **INTRODUCTION**

Following in the footsteps of the *Gamboa* complaint and ignoring core concessions the *Gamboa* plaintiffs themselves made while opposing dismissal on preemption grounds, Plaintiffs from 17 states have consolidated four federal actions over alleged violations of federal emissions standards for certain Ford Super Duty diesel vehicles. In direct contravention of their arguments to this Court that their claims do not depend on (or seek private enforcement of) federal standards or create emissions standards based on state law, Plaintiffs contend in their Consolidated Class Action Complaint ("CCAC") that Ford fraudulently failed to disclose that these vehicles produce "unlawfully high" emissions in certain "on-road" driving conditions compared to those measured during the Environmental Protection Agency's ("EPA") laboratory testing, allegedly using an "illegal" "defeat device."[1] Thus, the very foundation of the CCAC is fatally flawed.

For starters, the CCAC attempts to sidestep the reality that the subject vehicles are not and never were equipped with defeat devices—a fact that dooms all of Plaintiffs' claims. Indeed, the existence of such a defeat device is not even well pled in the CCAC. Yet, Plaintiffs force Ford and the Court to squander substantial time and resources bringing this truth to light. Over sixteen months have already passed litigating the first-filed *Gamboa* case that Ford moved to dismiss as preempted by

---

[1] A term Plaintiffs define (as the Court recognized) exclusively through federal law.

the Clean Air Act ("CAA")—a position it preserves and reasserts here. The Court rejected the preemption argument because, according to the *Gamboa* plaintiffs, Ford's alleged omissions are "not all connected to EPA regulations." (Dkt. 69, PgID 2392.) But the CCAC (like its predecessor) rests on allegations of misconduct that are *expressly connected* to EPA regulations. Plaintiffs cannot stave off preemption (and other grounds for dismissal) by mischaracterizing their *own* allegations.

Plaintiffs also defied the Court's order by including in the CCAC affirmative-misrepresentation allegations premised on the *exact* Ford marketing and advertising statements the Court rejected as non-actionable puffery, necessitating a *second* dismissal. Many claims also fail for state-specific reasons. Over half fail without a named plaintiff with standing to bring them. And eight fail as mere placeholders for claims Plaintiffs apparently hope to assert later.

Plaintiffs' noncompliance with the Court's order reflects the same disregard for judicial economy as their position on Rule 42(a) consolidation of *Gamboa* with the *Ruston*, *Goodroad*, and *Badagliacco* actions. Over a six-month period, Plaintiffs filed four actions regarding the emissions performance of certain Super Duty diesel-engine vehicles, and at all times agreed their cases should be consolidated. The CCAC shows that Plaintiffs did not intend to "see what the [Court] does" with the *Gamboa* motion (*see* Dkt. 39)—if they had, the CCAC would have tracked the *Gamboa* plaintiffs' concessions and the Court's order. Nor did Plaintiffs risk

2

prejudice by consolidation; they are now "afforded with the chance to adequately respond to" Ford's arguments to dismiss their consolidated allegations. (*See* Dkt. 69.) And, had Plaintiffs shared the Court's "interest in judicial economy" (*see id.*), they would have consolidated the cases when Ford first asked nearly a *year* ago. (*See* Dkt. 39.) Because Plaintiffs refused to consolidate before the Court decided Ford's motion to dismiss the (now-mooted) *Gamboa* complaint, the parties now face the exact conundrum Ford forecast: an order resolving the *Gamboa* motion that does not bind the now-consolidated action. (Dkt. 39, PgID 1773-75; Dkt. 46, PgID 1907-09.)

Now that the CCAC is operative to all four cases, Ford moves to dismiss it. For the reasons stated below and in Ford's earlier motion, as well as in Bosch's motions to dismiss the *Gamboa* complaint and the CCAC, Plaintiffs have defied the Court's earlier order, and failed to state a non-preempted or otherwise viable claim against Ford. The Court should dismiss the CCAC with prejudice.

## FACTUAL BACKGROUND

### A.    The Comprehensive Federal Regulatory Scheme

Ford incorporates its earlier synopsis of the CAA's comprehensive federal regulatory scheme governing all motor vehicle emissions. (Dkt. 28, PgID 1429-33.)

### B.    The CCAC

Plaintiffs (including one corporate entity) from 17 states accuse Ford of fraudulent concealment and breach of contract, and violations of the federal RICO

3

and various state consumer protection statutes. (CCAC ¶¶ 317-831.) Like the *Gamboa* complaint, the claims are premised on alleged affirmative misrepresentations or omissions, all of which sound in fraud. The bulk of the cited misrepresentations and omissions, however, are statements not to consumers, but to the EPA and CARB in connection with regulatory submissions. For example, Plaintiffs allege that Ford[2]:

- "fraudulently obtained" COCs (CCAC, ¶ 247);

- "misrepresent[ed] and omitt[ed] . . . vehicle specifications on COC and EO applications" (*id.* ¶ 338);

- "conceal[ed] the existence of the emission controls and the unlawfully high emissions from regulators and the public" (*id.*);

- "misle[d] government regulators as to the nature of the emission control technology and the defects in the [subject vehicles]" (*id.*); and

- "misle[d] the driving public as to the nature of the emission control technology and the defects in the [subject vehicles]" (*id.*).

As to consumers, Plaintiffs attach over 1,200 pages meant to evidence Ford marketing materials regarding the emissions system in the subject vehicles. But like the *Gamboa* exhibits, only 191 of these pages relate directly to Ford. (*Id.*, Exs. 6-12.) The rest are mostly newspaper articles and other materials regarding non-Ford vehicles and non-party automobile manufacturers like Volkswagen and FCA US.

---

[2] These allegations are pure conjecture and fabrication. Because Ford's AECD disclosures to the EPA are confidential, Plaintiffs have no plausible basis to cast aspersions on Ford's dealings with regulators.

The 191 pages include seven brochures for 2011 to 2017 Super Duty vehicles, and any arguably relevant statements therein are statistically infinitesimal relative to Plaintiffs' allegations of a pervasive seven-year advertising scheme premised on "clean diesel" or "green" vehicles. (*See, e.g.*, CCAC ¶¶ 113-147.) The vehicles are called the "Cleanest Super Duty Diesel Ever" a grand total of *four* times (never after 2013), showing just how specious the CCAC's 73 mentions of "clean diesel" or "cleanest diesel" are to Plaintiffs' case against Ford. Critically, no Plaintiff says she purchased her vehicle due to any individual concerns about the environment, or in reliance on emissions-based representations in any Ford brochure or advertisement. This is unsurprising: the marketing materials referenced in the CCAC—unlike those in the *Volkswagen*, *Counts*, and *Duramax* complaints—do not focus on emissions.

With no connection to Ford's alleged misrepresentations or omissions, each Plaintiff merely recites the same conclusory "injury" of "overpayment,": *i.e.*, she "would not have purchased the [vehicle], or would have paid less for it" had she known (or Ford disclosed) it "emitted unlawfully and/or unexpectedly high level of pollutants." (CCAC, ¶¶ 27-53.) No Plaintiff alleges, however, that she cannot drive her vehicle, lost employment, or incurred any additional costs as a result of Ford's conduct. And no Plaintiff sold her vehicle (or even tried)—let alone did so at a loss.

## LEGAL STANDARD

Under Rule 12(b)(6), the Court—accepting non-conclusory allegations as true—must be able to reasonably infer that a defendant is liable for a claim to relief that is "plausible on its face." *Malloy v. Watchtower Bible and Tract Socy.*, 17-cv-10635, 2017 WL 6539056, at *3 (E.D. Mich. Dec. 21, 2017) (Hood, J.). There must be "more than a sheer possibility that the defendant's conduct was unlawful." *Id.* Claims, as here, "comprised of labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*[3]

## ARGUMENT

### I.   Plaintiffs' Claims are Preempted by the CAA and Insufficient under the RICO Statute.

With the few differences described, the CCAC includes the same state law and RICO claims as the *Gamboa* complaint. The former are preempted by the CAA, and the latter fail for the reasons stated in Defendant Bosch's Motion to Dismiss the CCAC.[4] This Court previously accepted the *Gamboa* Plaintiffs' argument that their claims are not preempted because Ford's alleged fraudulent omissions are "not all connected to EPA regulations." (Dkt. 69, PgID 2392.) But in the CCAC, Plaintiffs

---

[3] Unless noted, emphases and alterations are added, and internal quotation marks, citations, and footnotes are omitted throughout.

[4] To preserve and reassert the reasons why these claims fail Ford hereby incorporates by reference all arguments asserted in its Motion to Dismiss the *Gamboa* complaint and Defendant Bosch's Motions to Dismiss the *Gamboa* complaint and the CCAC, and extends them to refute Plaintiffs' state law and RICO claims in the CCAC.

continue to rely on specific allegations of misconduct that are expressly connected
to EPA regulations, including, for example:

- Plaintiffs complain that Ford acted unlawfully by selling vehicles that violate emissions standards (*see, e.g.*, CCAC ¶¶ 27-53, 343);

- Plaintiffs provide a lengthy explanation of their own testing, which supposedly shows non-compliance with federal emissions standards (*see, e.g.*, *id.* ¶¶ 148-228); and

- Plaintiffs allege that Ford omitted material information about compliance with those same standards (*see, e.g.*, *id.* ¶¶ 27-52 (individual Plaintiffs purchased their vehicles on the "mistaken belief that [the subject vehicle] … complied with U.S. emissions standards [and] was properly EPA-certified"); *see also, e.g.*, ¶¶ 402, 455-457, 487-488, 508, 513, 514 (the subject vehicles "emitted ***unlawfully*** high levels of pollutants"); 523 (alleging diminished value "as a result of … ***the non-compliance with EPA emissions requirements***"); 514, 515, 517-518, 522 (alleging concealment of "non-compliance with EPA emissions requirements").)

Plaintiffs characterize their claims as violations of "other" duties, like one not
to mislead consumers. But the fundamental misconduct underlying their allegations
is the sale of vehicles that allegedly failed to meet the EPA's federal standards. Such
claims are expressly preempted. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg.,
Sales Practices, and Products Liab. Litig.*, 264 F. Supp. 3d 1040, 1054-55 (N.D. Cal.
2017) (claims preempted when used to penalize defendant for making engines that
"failed to comply with the Federal standards" and "conceal[ing] or misrepresent[ing]
[those] violations"); *Jackson v. General Motors Corp.*, 770 F. Supp. 2d 570, 574
(S.D.N.Y. 2011), *aff'd sub nom. Butnick v. GMC*, 472 F. App'x 80 (2d Cir. 2012).

Plaintiffs cannot evade preemption by relabeling as "misrepresentation" or "deceptive conduct" claims that are fundamentally predicated on, and seek to recover for, Ford's sale of vehicles that purportedly did not comply with federal emission standards. *See, e.g.*, *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004) ("distinguishing between pre-empted and non-pre-empted claims based on the particular label affixed to them would elevate form over substance"). By premising their claims on emissions exceeding EPA thresholds, Plaintiffs seek to enforce *precisely* the type of emissions standards that the CAA expressly preempts.

## II.  The CCAC Should be Dismissed to the Extent it is Based on Alleged Affirmative Misrepresentations.

This Court ordered that the *Gamboa* Plaintiffs are "not permitted to proceed with their claims that pertain to [Ford's] alleged affirmative misrepresentations." (Dkt. 69, PgID 2416.) "[S]tatements of cleanliness," the Court held, are "non-actionable opinions" and "promises of efficiency and reliability cannot form the basis for a fraud claim." (Dkt. 69, PgID 2388.) And while specific "numerically quantifiable representations" are sometimes actionable, "representations that merely contain numbers are not necessarily enough to qualify as actionable statements under a fraud theory." (*Id.*) Whether a numerical claim is actionable generally turns on whether it states that the product was tested by the advertising company and compares the product to a specific competitor by name. (*See id.*) The Court found that the *Gamboa* Plaintiffs' only numerical-claim allegation (that Ford's "cleanest

8

super duty diesel ever reduces nitrogen oxide (NOx) levels by more than 80% compared to last year") was a statistic "not quantifiable by itself." (*Id*. at 2389.) Since Ford neither asserted this statistic was "based on testing" nor compared its "engines to any identifiable competitor's product," and "[s]ince all of the other representations made by Ford are non-actionable," the Court held, ***"all of Ford's alleged affirmative misrepresentations amount to non-actionable puffery."*** (Dkt. 69, PgID 2388-89.)

Undeterred, Plaintiffs again premise their claims on supposed affirmative representations from Ford. *See, e.g.*, CCAC ¶¶ 27-52 (alleging ascertainable loss resulting from "Ford's omissions and/or misrepresentations"); 342 (alleging RICO Defendants "repeatedly misrepresent[ed] … the nature of" the subject vehicles); 338.) Beyond repeated (conclusory) allegations of "misrepresentations and/or omissions," Plaintiffs dedicate over 14 pages of the CCAC and 191 exhibit pages to supposed affirmative misrepresentations in advertisements. (*See, e.g.*, 113-147.) The Court has already ordered that the *Gamboa* Plaintiffs cannot premise their claims upon puffery. The Court should enforce that ruling against all Plaintiffs, and dismiss the CCAC's misrepresentation-based claims. (*See* Ex. 1 (highlighting allegations of non-actionable representations in the CCAC).)

## III.   <u>Several of Plaintiffs' State Law Claims Fail as a Matter of Law.</u>

Plaintiffs assert 57 claims under the laws of 47 states for violations of various consumer-protection statutes, breach of contract, and fraudulent concealment.

Beyond the above defects, many claims fail absent a resident named plaintiff with standing to bring them, and several claims are barred on state-specific grounds.

### A. Unrepresented Claims Must be Dismissed.

Plaintiffs attempt, but lack standing, to bring *over half* of their claims under laws of states where none of them reside. (*See* Counts 2, 26-50, 52-58.) Contrary to the *Gamboa* Plaintiffs' position, which the Court previously accepted, *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 422 (6th Cir. 1998), does *not* hold that a plaintiff with standing to bring a claim under one state's law can represent classes with claims under different states' laws. Indeed, the Sixth Circuit quoted *Fallick* for the proposition that "potential class representatives … cannot acquire [] standing merely by virtue of bringing a class action." *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 582 (6th Cir. 2016). And the Supreme Court's "standing decisions make clear that standing is not dispensed in gross." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650, 198 L. Ed. 2d 64 (2017). There *must* be a plaintiff with standing to bring "each claim," *id*., "throughout all stages of litigation." *Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013); *see Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 734 (2008). The standing decision need not await class certification. *See In Re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 655-57 (E.D. Mich. 2011) (finding "standing issues should be resolved in the first instance" because deferring them allows "named plaintiffs in a proposed class action … to embark on

lengthy class discovery with respect to injuries in potentially every state in the Union."). Unrepresented claims should be dismissed now.

### B. Statutory Class-Action Bars Require Dismissal of Six State Claims.

Plaintiffs cannot bring consumer-protection claims on behalf of Alabama, Georgia, Mississippi, Montana, Ohio, and South Carolina putative state subclasses because these states only allow recovery through *individual* actions.[5] And federal procedural rules—like Rule 23—do not override these substantive state laws. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014) ("Most courts … have determined that Rule 23 cannot be applied to otherwise prohibited class actions, because the class-action prohibition defines the scope of the state-created right, namely the right to bring a lawsuit for violations of the state's consumer-protection law."); *see also In re TD Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) (dismissing state statutory class claims); *Tait v. BSH Home Appliances Corp.*, 2011 WL 1832941, at *8-9 (C.D. Cal. May 12, 2011) (same). This tracks Justice Stevens's concurring opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Insurance Co.*, 559 U.S. 393 (2010). While Justice Stevens agreed Rule 23 preempted a New York **procedural rule**, the state laws here are "importantly different"—the New York law "had no substantive component." *Fejzulai v. Sam's*

---

[5] Ala. Code § 8-19-10(f) (Count 2); Ga. Code § 10-1-399(a) (Counts 11 and 12); Miss. Code § 75-24-15(4) (Count 42); Mont. Code § 30-14-133(1) (Count 43); Ohio Rev. Code § 1345.09(A) (Count 50); S.C. Code § 39-5-140(a) (Count 22).

*West, Inc.*, 205 F. Supp. 3d 723, 727 (D.S.C. 2016). "[F]ederal rules cannot displace a state's definition of its own rights or remedies," *Shady Grove*, 559 U.S. at 418 (Stevens, J., concurring). The Court should enforce the limits of the substantive state laws at issue by dismissing the class claims they prohibit.[6]

### C.     Plaintiffs' California, Illinois, Texas, and Wisconsin Omission-Based Claims Fail.

Under California, Illinois, and Texas law, a fraudulent-omission claim requires a plaintiff to identify a communication attributable to Ford from which material information was allegedly omitted.[7] Nowhere in the CCAC do Plaintiffs

---

[6] Plaintiffs' Mississippi Consumer Protection Act claim also fails because, with no Mississippi plaintiff, Plaintiffs cannot plausibly plead a "reasonable attempt" to resolve the claim through an Attorney General-approved "informal dispute settlement program," as required. *Lockey v. CMRE Fin. Servs., Inc.*, 2011 WL 2971085, at *2 (S.D. Miss. Jul. 20, 2011) (quoting Miss. Code § 75-24-15(2)); *accord In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1023 (N.D. Cal. 2018).

[7] CA: Fraud-by-omission claims under the CLRA or UCL require alleged omissions that were either "contrary to a representation actually made by the defendant" or something "the defendant was obliged to disclose.'" *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 752 (E.D. Mich. 2017); IL: An omission is not actionable if it gives rise to "an incomplete" as opposed to an affirmatively "false impression." *Spector v. Mondelez Intl., Inc.*, 178 F. Supp. 3d 657, 672 (N.D. Ill. 2016) (plaintiffs identified "no affirmative misrepresentation" by defendant of reported figures); TX: A fraud-by-omission claim requires all elements of "fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by omission of a material fact in light of a duty to disclose." *Baker v. Great N. Energy, Inc.*, 64 F. Supp. 3d 965, 974 (N.D. Tex. 2014); *see Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 891 (6th Cir. 2004) (must establish fraudulent concealment by alleging "specific affirmative conduct" by the defendant).

identify such a communication, much less one that allegedly omitted a material disclosure regarding emissions that induced the California, Illinois, and Texas plaintiffs to purchase their vehicles. Although Plaintiffs generically reference advertisements, product literature, and statements by authorized dealers (*see, e.g.*, CCAC ¶¶ 27-52 ("Plaintiff recalls that before he purchased the [vehicle], he researched and saw representations … on Ford's website and in brochures")), no California, Illinois, or Texas plaintiff alleges with specificity a deceptive statement she was allegedly exposed to before purchasing her vehicle. *See, e.g.*, *Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (vague references to a defendant's website fail under Rule 9(b)).

The Ford advertisements attached to the CCAC do not fill this pleading gap. No California, Illinois, or Texas plaintiff alleges whether or when she reviewed them, much less that they induced her vehicle purchase. Without a plausible link tying the communications to their purchases, their general and generic allegations cannot sustain California, Illinois, or Texas omission-based deception claims. *See, e.g.*, *Schiesser v. Ford Motor Co.*, 16 C 730, 2017 WL 1283499, at *6 (N.D. Ill. Apr. 6, 2017) (dismissing omission-based claim where plaintiff failed to identify a Ford communication which allegedly omitted material information).

Even if the WDTPA claim could proceed without a Wisconsin plaintiff, the Court's dismissal of Plaintiffs' affirmative-misrepresentation claims would doom

this claim, for which "[s]ilence—an omission to speak—is insufficient." *Tietsworth v. Harley-Davidson, Inc.*, 677 N.W.2d 233, 245 (Wisc. 2004). The WDTPA "does not purport to impose a duty to disclose, but, rather, prohibits only affirmative assertions, representations, or statements of fact"—making a nondisclosure actionable "would expand the statute far beyond its terms." *Id.*; *see Goudy v. Yamaha Motor Corp.*, 782 N.W.2d 114, 123-24 (Wisc. Ct. App. 2010) (non-disclosure is not actionable); *In re Duramax Diesel Litig.*, 17-cv-11661, 2018 WL 3647047, at *7 (E.D. Mich. Aug. 1, 2018) (cannot rely on "duty to disclose" in WDTPA claim).

The Court should dismiss Counts 6-8, 13, 15, 23, and 58 with prejudice.

### D. The Economic Loss Doctrine Bars the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") Claim.

The UTPCPL claim is barred by the economic loss doctrine, which prohibits recovery in tort for economic losses to which a plaintiff's "entitlement flows only from contract." *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671, 678-79, 681 (3d Cir. 2002) (applying doctrine to UTPCPL claims seeking only monetary damages from alleged fraud). Where, as here, the only alleged injury "is to the product itself and the product has not met the customer's expectations," "warranties under contract law are best suited to compensate for a loss in product value." *Id.* at 671.[8]

---

[8] Despite rulings by lower state courts, *Werwinski* is "good law" that binds federal courts applying Pennsylvania law. *Bolus v. Nationwide Prop. & Cas. Co.*, No. 3:16-cv-00753, 2018 WL 1474669, at *5 (M.D. Pa. Mar. 26, 2018); *Dixon v. Nw. Mut.*,

**E.** **Vehicle Sales are Highly Regulated Activities that are Exempt from the Michigan Consumer Protection Act ("MCPA").**

Plaintiffs' MCPA claim fails because motor vehicle sales are exempt from the act. The MCPA does not apply to "[a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904(1). The Michigan Supreme Court construes this exemption broadly; "the relevant inquiry is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Liss v. Lewiston-Richards, Inc.*, 478 Mich. 203, 210, 732 N.W.2d 514 (2007).

The transaction here—a vehicle sale by a licensed dealer—is exempt from the MCPA as specifically authorized and regulated by law. *See Jimenez v. Ford Motor Credit Co.*, 2015 WL 9318913, at *7 (Mich. Ct. App. Dec. 22, 2015) (exempting motor-vehicle sales from MCPA); *Matanky v. Gen. Motors LLC*, 18-10601, 2019 WL 1430114, at *20 (E.D. Mich. Mar. 29, 2019) (dismissing MCPA claim); *Rosenbaum v. Toyota Motor Sales, USA, Inc.*, 2016 WL 9775018, at *3 (E.D. Mich. Oct. 21, 2016) (MCPA claim fails because Michigan "regulates how car wholesalers … advertise automobiles" and "the content of general automobile advertisements").

---

146 A.3d 780, 790 n.12 (Pa. Super. Ct. 2016). Indeed, the Third Circuit recently applied the economic loss doctrine to bar a UTPCPL claim. *See Simchon v. Highgate Hotels, LP*, No. 3:15-CV-01434, 2016 WL 6595918, at *1 (M.D. Pa. Nov. 7, 2016).

15

### F. The Colorado Consumer Protection Act ("CCPA") Prohibits Claims for Money Damages.

Plaintiffs' CCPA claim fails both because these non-Colorado Plaintiffs cannot plausibly allege a "real and immediate threat" of future injury in Colorado as necessary for their requested injunctive relief, *see Buchwald v. University of New Mexico School of Medicine*, 159 F.3d 487, 494 (10th Cir. 1998), but also because the CCPA bars their requested money damages in a class action. *See* Colo. Rev. Stat. § 6-1-113(2) ("***Except in a class action*** ... any person who" has engaged in "any deceptive trade practice ... shall be liable [for monetary damages]."); *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, 2015 WL 4036319, at *3 (D. Colo. July 1, 2015) ("[T]he plain language of the [CCPA] appears to preclude monetary damages and treble damages in class actions."); *accord Matanky v. Gen. Motors LLC*, 18-10601, 2019 WL 1430114, at *19 (E.D. Mich. Mar. 29, 2019) (dismissing CCPA class claim for monetary damages). The Court should dismiss Plaintiffs' CCPA claim.

### G. Plaintiffs do not Allege the Contractual Privity Required for the Idaho and Kentucky Consumer-Protection Claims.

Both the Kentucky Consumer Protection Act ("KCPA") and Idaho Consumer Protection Act ("ICPA") require contractual privity between the consumer and the defendant. *See Keaton v. G.C. Williams Funeral Home, Inc.,* 436 S.W.3d 538, 546 (Ky. Ct. App. 2013) (plaintiffs lacked standing against subcontractor under KRS 367.220(1), which allows claims only by those "who personally purchase goods or

services from a merchant"); *Taylor v. McNichols*, 243 P.3d 642, 662 (Idaho 2010) ("to have standing under the [ICPA], the aggrieved party must have been in a contractual relationship with the party alleged to have acted unfairly or deceptively"); *accord In re Duramax Diesel Litig.*, 2018 WL 3647047, at *9-10 (dismissing KCPA and ICPA claims; holding "the Idaho Supreme Court has unambiguously interpreted the ICPA as requiring direct contractual privity"). Because Plaintiffs do not live in Kentucky or Idaho and do not allege a contractual relationship in those states with Ford, Counts 30 and 34 fail.

### H.   Plaintiffs' California and Illinois Breach-of-Contract Claims Fail because they have not Alleged the Existence of a Contract.

Relatedly, the California and Illinois Plaintiffs' breach-of-contract claims fail because they do not allege the existence of a valid contract with Ford, much less a breached provision by Ford. *See Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1296 (C.D. Cal. 2015) (party must plead existence of a contract, her performance or excuse for nonperformance, defendant's breach, and resulting damage); *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1056 (C.D. Cal. 2014) (rejecting claim because plaintiffs did not "allege that a contract existed"); *American Hardware Mfrs. Ass'n v. Reed Elsevier, Inc.*, NO. 03 C 9421, 2004 WL 3363844, *10 (N.D. Ill. Dec 28, 2004) ("plaintiff must identify the relevant agreement, the basic contents of that agreement, and the pertinent parties").

Despite the generic allegation that "each and every sale or lease … constitutes a contract" with Ford (CCAC ¶ 429), the California and Illinois Plaintiffs plead they purchased their vehicles from entities other than Ford. (*See, e.g.*, *id.* ¶¶ 30-33 (California), ¶ 37 (Illinois)). "It is well settled law that one must be a party to a contract in order to be held liable for its breach." *Herman v. Bridgewater Park Apartments*, 2016 WL 826050, at *5 (E.D. Mich. Mar. 3, 2016); *see Kelly v. Worth Holdings, LLC*, 2017 WL 4156186, at *8 (N.D. Cal. Sept. 18, 2017) ("a plaintiff may not maintain a breach of contract claim against a person who is not a party to the contract"); *Andrus v. Estrada*, 39 Cal. App. 4th 1030, 1042 n. 14 (Cal. Ct. App. 1995) (to be liable for breach, defendant must be a party to the contract). Because the California and Illinois Plaintiffs do not allege that Ford was a party to their purchase agreements, the Court should dismiss their breach-of-contract claims.

These Plaintiffs' contract claims also fail because they do not, as they must, "identify the specific provision of the contract allegedly breached by" Ford. *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), *aff'd*, 700 F. App'x 588 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1027 (2018); *accord Harris v. Am. Postal Workers Union*, 198 F.3d 245, at *4 (6th Cir. 1999) ("It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached."); *Alvarado v. Aurora Loan Servs.*, LLC, 2012 WL 4475330, at *4 (C.D. Cal. Sept. 20,

2012) (terms "must be set out verbatim in the body of the complaint or a copy of the written agreement must be attached and incorporated by reference" or "by alleging the substance of its relevant terms"); *Hoopla Sports and Entertainment, Inc. v. Nike, Inc.*, 947 F. Supp. 347, 356 (N.D. Ill. 1996) (dismissing breach of contract claim for lack of "sufficient allegations describing the terms of the alleged contract").

The California and Illinois breach-of-contract claims should be dismissed.

## I.     Plaintiffs' Louisiana Claims are Preempted under Louisiana Law.

If there were Louisiana plaintiffs, their fraudulent-concealment and Uniform Trade Practices Act ("LUTPA") claims would be subsumed by the Louisiana Products Liability Act ("LPLA"), which "establishes the exclusive theories of liability for manufacturers for damage caused by their products." La. Rev. Stat. § 9:2800.52. "[C]ourts routinely dismiss claims against manufacturers that do not arise under" the LPLA. *In re Gen. Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2016 WL 3920353, at *29 (S.D.N.Y. July 15, 2016) (citation omitted); *see also, e.g.*, *In re Duramax Diesel Litig.*, 2018 WL 3647047, at *10-13. Any damages for Louisiana plaintiffs would be "directly tied to products manufactured by [Ford] and, thus, the only method of recovery under Louisiana law is through the LPLA." *In re Gen. Motors*, 2016 WL 3920353, at *29. Counts 35 and 36 should be dismissed.

**J.      Several Punitive-Damages Claims are Barred or Excluded.**

The Court should dismiss or strike all punitive-damages claims brought in states where none of the Plaintiffs live, and brought under consumer-fraud statutes that do not allow for punitive damages. (*See* CCAC ¶¶ 395, 722, 728, 733, 767, 570, 608; Counts 5, 21, 25, 39, 40, 41, 45, 47.)

*Unrepresented States:* Because a jury cannot "use a punitive damages verdict to punish" a defendant for "harms it is alleged to have visited on nonparties," *see Philip Morris U.S.A. v. Williams*, 549 U.S. 346, 355 (2007), Plaintiffs' requests for punitive damages based on alleged harm in other states must be dismissed. *See* Counts 26-58 (CO, CT, DE, HI, ID, IN, IA, KS, KY, KA, ME, MD, MI, MN, MS, MT, NE, NV, NH, MN, NC, ND, OH, OR, RI, SD, VT, VA, WA, WI, WY).

*Arkansas*. The Arkansas Deceptive Trade Practices Act ("ADTPA") does not "support an award for punitive damages." *Bennett v. Bumble Bee Foods, LLC*, 2014 WL 11515509, at *2 (W.D. Ark. Oct. 8, 2014) (citing A.C.A. § 4-88-113(f)); *Sims v. State Farm Mut. Auto. Ins. Co.*, 2013 WL 12178135, at *2 (E.D. Ark. Sept. 18, 2013) (ADTPA only contemplates "actual damages and attorneys' fees").

*Michigan*. The MCPA "does not authorize an award of punitive or exemplary damages." *Am. Express Co. v. Lipscomb*, 1981 WL 40529, at *6 n.6 (E.D. Mich. Jan. 12, 1981); *see Nowicki-Hockey v. Bank of Am., N.A.*, 593 F. App'x 420, 421

(6th Cir. 2014) (citing Mich. Comp. Laws § 445.911(2); the MCPA's lack of "express language permitting exemplary damages … precludes [such] an award").

*Minnesota*. Punitive damages are not permitted under Minnesota's Deceptive Trade Practices Act ("MDTPA") or Prevention of Consumer Fraud Act ("CFA"). *See Sierra Petroleum Co. v. Beaudry Oil & Serv., Inc.*, 2011 WL 13199285, at *6 (D. Minn. Mar. 7, 2011); *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 2010 WL 4193076, at *8-9 (D. Minn. Oct. 7, 2010) (citing Minn. Stat. § 325D.44); *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, 2004 WL 909741, at *7 (D. Minn. Apr. 28, 2004) (citing Minn. Stat. §§ 325F.69, 8.31).

*New Mexico*. The New Mexico Unfair Trade Practices Act ("NMUTPA") allows only for trebled damages, but not additional punitive damages. *See* N.M. Stat. § 57-12-10; *see also McLelland v. United Wisconsin Life Ins. Co.*, 980 P.2d 86, 90 (N.M. Ct. App. 1999) ("to obtain punitive damages beyond" treble damages, plaintiff must establish a cause of action "other than one under the [NMUTPA]"); *Dollens v. Wells Fargo Bank, N.A.*, 356 P.3d 531, 541 (N.M. Ct. App. 2015) (the "only punitive damages provided for by the [NMUT]PA are treble damages").

*Pennsylvania*. Plaintiffs are "not entitled to recover punitive damages on [their UTPCPL] claim." *Lindsley v. Am. Honda Motor Co., Inc.*, 2017 WL 2930962, at *10 (E.D. Pa. July 7, 2017); *see also In re Duramax Diesel Litig.*, 17-cv-11661, 2018 WL 3647047, at *15 (E.D. Mich. Aug. 1, 2018) (striking punitive damages claim).

*West Virginia*. "Punitive damages are not available" under the West Virginia

Consumer Credit and Protection Act ("WVCCPA"). *Stottlemire v. Caliber Home*

*Loans, Inc.*, 2017 WL 282419, at *3 (N.D. W. Va. Jan. 20, 2017); *see Quicken*

*Loans, Inc. v. Brown*, 777 S.E.2d 581, 598, n.20 (W. Va. 2014) (WVCCPA does not

"provide a statutory basis for an award of punitive damages"); *Patrick v. PHH*

*Mortg. Corp.*, 937 F. Supp. 2d 773, 787 (N.D. W. Va. 2013) (the WVCCPA penalty

provision "has been interpreted to preclude the award of punitive damages").

## IV. Plaintiffs' "Placeholder" Claims should be Dismissed.

Plaintiffs include a two-paragraph Massachusetts claim, CCAC ¶¶ 526–27,

and eight claims "for notice purposes only" as placeholders for claims they

apparently intend to assert (or for others to asset) later, *id.* ¶¶ 368 (AL), 377 (AK),

470 (GA), 602 (WV), 610 (VA), 649 (IN), 710 (ME), 828 (WY). The former claim

fails as patently insufficient, and the latter "[p]lace-holder [c]laims do not assert any

claims at all" and "must be dismissed." *Wozniak v. Ford Motor Co.*, No. 2:17-cv-

12794, 2019 WL 108845, at *1 (E.D. Mich. Jan. 4, 2019); *see In re New Motor*

*Vehicles Canadian Export Antitrust Litig.*, 350 F. Supp. 2d 160, 183, 188-89 (D. Me.

2004) (a complaint cannot serve as "notice if it is later amended to add a consumer

protection claim."); *Sarantopoulas v. Bank of Am., N.A.*, 2012 WL 4761900, at *5

(N.D. Cal. Oct. 5, 2012) (holding "plaintiffs cannot be permitted to assert

placeholder claims in the absence of supporting facts"); *cf. Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'").

## V.    The Court should Strike References to Compliance with Federal Emissions Standards.

Although the CCAC is "more properly dismissed on its merits," *Bowser v. Bogdanovic*, No. 08-cv-847, 2010 WL 1462548, at *3 (M.D. Pa. Apr. 9, 2010), the Court should, alternatively, exercise its "liberal discretion" under Rule 12(f) to strike matters the *Gamboa* Plaintiffs—in order to avoid preemption—conceded were immaterial and impertinent to their theories. *See Doe v. Cin-Lan, Inc.*, No. 08-12719, 2009 WL 1508367, at *1 (E.D. Mich. May 29, 2009); *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) ("immaterial" matter "has no essential or important relationship to [a] claim"; "impertinent" matter is "not necessary to the issues in question"); *Barnes v. Convention & Show Servs., Inc.*, No. 12-cv-13770, 2013 WL 2467920, at *1 (E.D. Mich. June 7, 2013). These allegations "can have no possible bearing upon the subject matter" of this litigation. *Canadian Ingersoll-Rand Co. v. D. Loveman & Sons, Inc.*, 227 F. Supp. 829, 831 (N.D. Ohio 1964). And by striking them now, the Court avoids the unnecessary "expenditure of time and money" spent litigating them. *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015).

To avoid preemption, the *Gamboa* Plaintiffs told the Court they are not relying on violations of federal statutes, and disclaimed the significance of those statutes and

standards for their claims. (*See, e.g.*, Dkt. 69, PgID 2380 (Plaintiffs argue their claims "do not require proof that Ford used a 'defeat device' as defined by federal law" and "are not seeking to replace existing EPA certification tests"); *id.* (Plaintiffs believe they "can alternatively prove their fraud claims by reference to what a reasonable consumer would have expected … without proof of Ford's regulatory noncompliance"); *id.* at 2378 (Plaintiffs claim they "are not seeking to enforce any numerical emissions levels"); Dkt. 35, PgID 1716 ("[T]he duty at issue is the state law duty not to deceive, not any federal duty to comply with emissions standards.").)

Courts, including this one, routinely strike immaterial allegations, including regarding previously-dismissed claims. *Cf. Turner v. French*, No. 07-14694, 2009 WL 103977, at *1 (E.D. Mich. Jan. 14, 2009) (Rule 12(f) motion is "properly granted where the amended complaint contains allegations of claims previously dismissed by the district court"); *see, e.g.*, *Western Commc'n Corp. v. Barnick*, No. 18-cv-10437, 2018 WL 2717781, at *3 (E.D. Mich. June 6, 2018) (striking allegations with no bearing and seemingly intended to undermine defendant's reputation); *Spizizen v. National City Corp.*, No. 09-11713, 2010 WL 419993, at *3 (E.D. Mich. Feb. 1, 2010); *West Lumber, LLC v. Burke-Parsons-Bowlby, Corp.*, 2011 WL 144926, *3 (E.D. Tenn. 2011) (courts have "found the resubmission of previously-dismissed counts to be immaterial"); *TCG Detroit v. City of Dearborn*, 977 F. Supp. 836, 841-42 (E.D. Mich. 1997). Disavowed allegations deserve the same treatment.

Plaintiffs should not be permitted to renounce the relevance of Ford's compliance with federal standards to avoid preemption, while simultaneously supporting their consumer fraud theory with those same renounced allegations. Indeed, the *Gamboa* Plaintiffs are *judicially estopped* from doing so. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (judicial estoppel bars "a position that is contrary to" previous position adopted by the court). Plaintiffs cannot have it both ways—if the Court finds their claims can survive preemption by disregarding references to Ford's alleged noncompliance with federal emission standards, then those references are immaterial and impertinent and should be stricken. (*See* Ex. 1 (highlighting allegations of violations of federal standards in the CCAC and allegations regarding other manufacturers or unrelated subject vehicles).)

## CONCLUSION

The Court should dismiss the CCAC with prejudice.

Respectfully submitted,

<table>
<tr><td>By:   /s/ Joel A. Dewey</td><td>By:   /s/ Stephanie A. Douglas</td></tr>
<tr><td>Joel A. Dewey<br>Jeffrey M. Yeatman<br>DLA PIPER LLP (US)<br>6225 Smith Avenue<br>Baltimore, Maryland 21209<br>(410) 580-4135<br>joel.dewey@dlapiper.com<br>jeffrey.yeatman@dlapiper.com</td><td>Patrick G. Seyferth (P47575)<br>Stephanie A. Douglas (P70272)<br>BUSH SEYFERTH & PAIGE PLLC<br>3001 W. Big Beaver Rd., Ste. 600<br>Troy, MI 48084<br>(248) 822-7800<br>seyferth@bsplaw.com<br>douglas@bsplaw.com</td></tr>
</table>

*Attorneys for Defendant Ford Motor Company*