UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LEN GAMBOA, *et al.*, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>        v.<br><br>FORD MOTOR COMPANY, *et al.*,<br><br>               Defendants. | Case No. 18-CV-10106-DPH-EAS<br><br>Chief Judge Denise P. Hood<br><br>Magistrate Judge Elizabeth A. Stafford |

## JOINT RULE 26(f) REPORT

Plaintiffs and Defendants Ford Motor Company and Robert Bosch LLC (collectively, "the Parties") hereby submit this Joint Statement in accordance with Federal Rule of Civil Procedure 26(f).

## I.    Discovery Plan

The Parties held their Rule 26(f) conference on August 2, 2019, and discussed a discovery plan to promote the efficient and speedy resolution of this case. The Parties' proposed discovery plan is set forth below.

### A.    Rule 26(a)(1) Initial Disclosures

The Parties will exchange initial disclosures in accordance with Rule 26(a)(1) on August 26, 2019.

**B.** **Subjects on Which Discovery May Be Needed and**
**Timing/Phasing of Discovery**

Pursuant to Rule 26(f)(3)(B), the Parties have conferred regarding the subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused on particular issues. The Parties' proposals on these issues are set forth below.

**1.** **Subjects on Which Discovery May Be Needed**

**a.** **Plaintiffs' Proposal**

Plaintiffs propose to take discovery on the following topics, among others: (1) the development of the emissions control systems used in the model year 2011–2017 Ford F-250, F-350, and F-450 Super Duty diesel trucks (the "Class Vehicles"); (2) the emissions certification of the Class Vehicles with respect to state and federal regulations; (3) the development or manufacture of the Class Vehicles, including, but not limited to, communications with third-party suppliers; (4) the certification or testing of the emissions control systems in the Class Vehicles; (5) the existence and use of auxiliary emissions control devices (AECDs) in the Class Vehicles; (6) the ability of the engine control module in the Class Vehicles to recognize emission testing conditions; (7) Defendants' communications with governmental entities or regulatory authorities regarding the certification or testing of the emissions control systems installed in the Class Vehicles; (8) the effect that the Class Vehicles' emissions control systems have on

-2-

the vehicles' fuel economy or performance; (9) Defendants' correspondence or communication with consumers or dealers regarding remedial actions, service actions, or recalls relating to the emissions control systems in Class Vehicles; (10) marketing and advertising campaigns for the Class Vehicles; (11) sales data sufficient to determine how many of each Class Vehicle has been sold in the U.S. by state and model/model year; (12) the economic benefit that Defendants derived from the use of any auxiliary emissions control devices in the Class Vehicles; (13) research or analysis regarding exhaust emissions from the Class Vehicles; (14) vehicle registration data or analyses reflecting registration of the Class Vehicles in each geographic region, major city, and/or zip code; (15) discussions of the value of the Class Vehicles and of comparable vehicles made by competitors, including, but not limited to, segmented "T-Line" data; (16) correspondence or communications with any plaintiff named in the Consolidated Class Action Complaint; (17) Ford's officers, directors, and employees who have knowledge of Ford's business, operations and financial information, as well as the conduct alleged in the Complaint; (18) Bosch's officers, directors, and employees who have knowledge of Bosch's business, operations and financial information, as well as the conduct alleged in the Complaint; and (19) the relationship and communications between the Defendants with respect to the emissions control systems installed in the Class Vehicles.

-3-

b.    **Ford's Proposal**

Some of Plaintiffs' proposed discovery is not relevant or proportional to the needs of the case.  Ford anticipates seeking discovery and taking depositions on topics that will include the following: (a) sale, servicing, use, repair, modification and disposition of Plaintiffs vehicles; (b) Plaintiffs' knowledge at the time of purchase; (c) information conveyed to Plaintiffs regarding the Subject Vehicles at and prior to purchase; (d) repair efforts and Plaintiffs interactions with repair facilities, Ford dealerships, and/or Ford; (e) information relating to other vehicles Plaintiffs have owned, including all repair and maintenance records for those vehicles; (f) the disclosure(s) Plaintiffs allege Ford should have made; (g) the extent to which Plaintiffs' claims are typical of the proposed class; (h) the alleged "defect" in Plaintiffs' vehicles and the extent to which that alleged defect is "common" to the Subject Vehicles or proposed class of vehicles; (i) the extent to which Plaintiffs are adequate and typical representatives of the proposed class; (j) Plaintiffs' alleged damages and the extent to which others in the proposed class share those damages; (k) the extent to which individual issues predominate over common issues; (l) Plaintiffs' testing described in their complaint; (m) any expert opinions submitted by Plaintiffs in this litigation; (n) the advertisements, statements and representations upon which plaintiffs allegedly relied in electing to

purchase the Subject Vehicles; and (o) plaintiffs' expectations about the subject vehicles.

### c.    Bosch's Proposal

Bosch LLC concurs with Ford's proposal. In addition to those topics Ford proposed, Bosch anticipates serving discovery and taking depositions on the following topics, among others: (a) plaintiffs' knowledge of, and interactions with, Bosch LLC prior to the current litigation; (b) the disclosure(s) Plaintiffs allege Bosch LLC should have made.

### 2.    When Discovery Should Be Completed & Whether Discovery Should Be Conducted in Phases

The Parties agree to conduct fact discovery and expert discovery in separate phases.  Fact discovery will commence on August 26, 2019, and will conclude by October 1, 2020.  The Parties may apply (jointly or separately) for an extension of this deadline upon a showing of good cause.

Expert discovery will commence on November 2, 2020, and conclude by June 14, 2021.  The Parties will file a joint protocol for expert discovery by October 16, 2019.  If the Parties are unable to agree on the contents of such a protocol, each party shall submit its own proposed order with a memorandum (not to exceed five (5) pages) explaining why the Court should adopt that party's particular proposal.

010607-11/1173553 V1

### C.     Electronically Stored Information (ESI) and Protective Order

The Parties have exchanged drafts of their proposed protocol for electronically stored information (ESI) and will continue to meet and confer on the disclosure, discovery, preservation, and appropriate production format of ESI.  The parties also contemplate filing a protective order and have exchanged a draft.

### D.     Changes to Limitations on Discovery

Unless otherwise specified herein, the Parties agree that written discovery requests, and responses and objections thereto, shall be made in accordance with the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the Eastern District of Michigan.  Written responses and objections to requests for the production of documents shall be due 30 days after service of the request, written responses and objections to interrogatories and requests for admission shall be due 45 days after service of the request, and verifications of interrogatories shall be provided within 14 days after service of written responses and objections to those interrogatories.

### 1.     Interrogatories and Requests for Admission

The Parties do not currently propose any change to the limit of 25 written interrogatories, including all discrete subparts, that may be served on any party as set forth in Rule 33(a)(1), but reserve the right to revisit the issue in the future. The Parties may agree to use streamlined Plaintiff Fact Sheets ("PFS") in lieu of interrogatories on the class representatives named in the Consolidated Class Action

-6-

Complaint.  If so, the Parties will meet and confer to agree on the form and content of any such PFS.    The Parties agree to limit Requests for Admission to 25 requests, including subparts.

### 2.    Depositions

The Parties will meet and confer on the procedure and maximum number of depositions that may be taken in this case.   The Parties will submit their joint proposed deposition protocol by September 16, 2019.  If the Parties are unable to agree on the contents of such a protocol, each party shall submit its own proposed order with a memorandum (not to exceed five (5) pages) explaining why the Court should adopt that party's particular proposal.   No party will notice a deposition prior to Court's entry of a deposition protocol.

### E.    Other Orders Under Rules 16(b), 16(c) and 26(c)

### 1.    Plaintiffs' Scheduling Proposal

Plaintiffs respectfully seek entry of a Case Management and Scheduling Order with the proposed schedule set forth below.   This schedule provides deadlines for several important joint protocols at the start of discovery, including a protocol for electronically stored information, to mitigate common discovery disputes that would otherwise arise over the course of the litigation. The schedule also establishes a deadline for substantial completion of document production to ensure that the parties produce documents sufficiently in advance of fact witness

-7-

depositions and the close of fact discovery.   Furthermore, the schedule contemplates a reasonable briefing schedule for class certification and summary judgment to facilitate a just and speedy resolution of the case by the fall of 2021.

Defendants' proposed schedule, in contrast, promotes inefficiencies by setting summary judgment before class certification.  This places the cart before the horse and is flawed for several reasons.  First, seeking summary judgment prior to class certification would address only the claims of the individually named plaintiffs, rather than the putative class.  *See, e.g.*, *Schwarzschild v. Tse*, 69 F.3d 293, 297 (9th Cir. 1995) ("[W]hen defendants obtain summary judgment before the class has been properly certified or before notice has been sent, . . . the district court's decision binds only the named plaintiffs.").  Thus, even if Defendants prevailed at summary judgment against an individual plaintiff, the summary judgment order would not bind absent class members or definitively dispose of the class claims.  Ruling on summary judgment prior to class certification would also create the risk of "one-way intervention," which would "allow members of a class to benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one." *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 547 (1974); *see also Gooch v. Life Inv'rs Ins. Co. of Am.*, 672 F.3d 402, 432 (6th Cir. 2012) ("The rule against one-way intervention prevents potential plaintiffs from awaiting merits rulings in a class action before deciding whether to intervene in

that class action.").  Deciding summary judgment prior to class certification would therefore create an inefficient result, regardless of which party prevails.

Second, any individualized challenges that Defendants could assert against the named plaintiffs would be better raised at class certification, where the Court would already be evaluating the adequacy of the class representatives and the typicality of their claims.  And, because the Court's class certification order is binding, there would not be any issues with enforcing the *res judicata* effect of the order, as Defendants envision.  There is simply no need to engage in multiple rounds of preemptive, individualized summary judgment briefing when the claims of all the named plaintiffs will already be scrutinized and efficiently addressed at class certification.

Third, Defendants misinterpret Plaintiffs' proposed schedule to provide for *Daubert* motions only after class certification.  Not so.  Plaintiffs' proposed schedule contemplates expert discovery for class certification experts who may be challenged during the class certification briefing, as well as non-class certification experts who may be challenged during the summary judgment briefing. Defendants therefore would not be deprived of an opportunity to fully brief their opposition to class certification or challenge Plaintiffs' experts here.

Finally, under Rule 23, the Court must determine whether to certify a class "at an *early* practicable time after a person sues or is sued as a class

-9-

representative." Fed. R. Civ. P. 23(c)(1)(A) (emphasis added). Defendants' plan to put off class certification until October 1, 2021—one year after their proposed close of fact discovery and less than six months before their proposed trial date— fails to comply with Rule 23 and serves only to delay Plaintiffs' prosecution of this case. Defendants' reference to the discovery schedule in *In re Duramax Diesel Litigation*, Case No. 2:17-cv-11661 (E.D. Mich.) (Ludington, J.) is completely irrelevant. Plaintiffs' counsel's discovery plan in another case—based on different circumstances and involving a different automobile manufacturer—has no bearing on the appropriate scheduling order here. Defendants' citation to this Court's ruling in *Fulton v. Enclarity, Inc.*, No. 16-13777, 2016 WL 10459385, (E.D. Mich. Nov. 8, 2016) is likewise unavailing. Unlike the plaintiffs in *Fulton*, who moved for class certification before entering a discovery order or even giving the defendants an opportunity to respond to the complaint, Plaintiffs here have already briefed multiple rounds of motions to dismiss, have had lengthy meet and confers with Defendants regarding the discovery schedule, and stand ready to proceed with discovery. Thus, Plaintiffs request that the Court enter the schedule proposed below.

| Event | Date |
|---|---|
| The Parties exchange their Rule 26 initial disclosures. | **August 26, 2019** |
| Fact Discovery begins. | **August 26, 2019** |
| Deadline for the Parties to file their joint protective order and privilege nonwaiver agreement or alternatively file joint letter outlining parties' positions and disagreement(s). | **September 13, 2019** |
| Deadline for the Parties to file their joint ESI protocol or alternatively file joint letter outlining parties' positions and disagreement(s). | **September 13, 2019** |
| Deadline for the Parties to file their joint deposition protocol or alternatively file joint letter outlining parties' positions and disagreement(s). | **September 16, 2019** |
| Deadline for the Parties to file their joint expert discovery protocol or alternatively file joint letter outlining parties' positions and disagreement(s). | **October 16, 2019** |
| Deadline for the Parties to substantially complete their productions of non-privileged, responsive documents. | **May 1, 2020** |
| Close of Fact Discovery. | **October 1, 2020** |
| Settlement Conference. | **October 9, 2020** |
| Plaintiffs move for class certification and submit any expert reports in support of class certification. | **November 2, 2020** |
| Expert Discovery begins. | **November 2, 2020** |
| Defendants file their brief(s) in opposition to Plaintiffs' motion for class certification, file their motion(s) challenging Plaintiffs' class certification experts, and submit any expert reports in opposition to class certification. | **January 8, 2021** |
| Plaintiffs file a reply brief in support of their motion for class certification, file their motion(s) challenging Defendants' class certification experts, and submit any rebuttal expert reports in support of class certification. | **March 8, 2021** |
| Class certification hearing. | **[At Court's Discretion]** |

| Event | Date |
|---|---|
| Deadline for Plaintiffs' Expert Disclosures and Reports relating to non-class certification issues. | **March 15, 2021** |
| Deadline for Defendants' Expert Disclosures and Reports relating to non-class certification issues. | **April 19, 2021** |
| Deadline for Plaintiffs' Rebuttal Expert Disclosures and Reports relating to non-class certification issues. | **May 17, 2021** |
| Close of Expert Discovery. | **June 14, 2021** |
| The Parties file their Motions Challenging Experts. | **June 28, 2021** |
| The Parties file their Dispositive Motions. | **June 28, 2021** |
| Pretrial Disclosures. | **August 16, 2021** |
| The Parties file their Motions in Limine. | **September 13, 2021** |
| Final Pretrial Conference. | **October 4, 2021** |
| Trial begins. | **Week of October 11, 2021** |

### 2.   **Defendants' Scheduling Proposal**

Plaintiffs' counsel's proposed dates for expert discovery, *Daubert* motions, and dispositive motions depart from their position in *Duramax* (*see* No. 17-cv-11661, Dkt. 63, PgID 3569 (proposed pre-certification expert, dispositive-motion deadlines)) and undermine Defendants' due-process right to challenge both the claims of named Plaintiffs and the viability of the putative class. Class certification requires a rigorous analysis of an adequate record to "resolv[e] the relevant issues." *Fulton v. Enclarity, Inc.*, No. 16-13777, 2016 WL 10459385, at *1 (E.D. Mich. Nov. 8, 2016) (Hood, C.J.) (denying pre-discovery class certification because of defendants' due-process rights to "conduct discovery" or brief "class certification

issues"). This is true even if there is overlap with the merits of Plaintiffs' case, and applies to *Daubert* motions and dispositive motions alike.

Plaintiffs' proposed dates jumble the order of, and deprive the necessary time for, the Court's assessment of the merits of individual and class claims, and the parties' testing of them. Defendants deserve the chance to challenge Plaintiffs' experts' qualifications or submissions in support of the putative class claims, and to file dispositive motions (as the facts and law develop) against individual Plaintiffs or claims *before* they are certified and the pressures of settlement overwhelm the litigation. Plaintiffs' schedule would rob Defendants of these opportunities and create needless and costly litigation through incomplete briefing on, among other things, class typicality and adequacy inquiries, and—if challenges to plaintiffs, experts, and claims push past certification—potential motions to decertify the class.

Plaintiffs' arguments that summary judgment motions should come after class certification make no sense. It is neither efficient nor fair to permit Plaintiffs with no claims of their own to represent a certified class, only to then have the Court dismiss their claims (and thus the entire litigation) on summary judgment because they lacked legally viable claims all along.   The results of summary judgment motions will also inform the class certification decision.   If individual results of summary judgment motions differ, that will suggest that class

-13-

certification is inappropriate for those claims, regardless of the class representative. Plaintiffs also argue that summary judgment risks "one-way intervention," but that is not supported by their cited caselaw and would, at any rate, be a concern *Defendants* might have—not one that Plaintiffs can have on Defendants' behalf. The fact that Plaintiffs' counsel are arguing *against their own putative class members'* ability to preserve their ability to litigate their own claims if those of the named Plaintiffs were to fail suggests that Plaintiffs' counsel's real concern lies elsewhere. Even a post-certification summary-judgment ruling that purportedly binds absent class members could not prevent those members' inevitable challenge to the adequacy of their representatives. At that point, Defendants would be forced to argue adequacy just to enforce *res judicata* effects. This cannot be permitted. When, as here, there are serious doubts as to many of Plaintiffs' claims, the Sixth Circuit simply does not "requir[e district courts] to rule on a motion for class certification before ruling on the merits of the case." *Miami Univ. Wrestling Club v. Miami Univ.*, 302 F.3d 608, 616 (6th Cir. 2002); *see Marx v. Centran Corp.*, 747 F.2d 1536, 1552 (6th Cir. 1984) ("It has never been doubted that a complaint asserting a class action could be dismissed on the merits before determining whether the suit could be maintained as a class action."). And, to the extent that Plaintiffs are suggesting that all individual issues can be adjudicated at the class certification stage, what they propose is incorrect and inefficient. *See, e.g.*, *In Re:*

-14-

*General Motors LLC Ignition Switch Litigation*, No. 14-MC-2543 (JMF), 2019 WL 3564698, at *17 (S.D.N.Y. Aug. 6, 2019) (emphasizing the wide-reaching impact of a summary judgment decision, in light of which the parties' efforts with respect to class certification motions appear to have been inefficient); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018) (class certification was reversed where certain issues of fact were not first adjudicated through summary judgment).

Plaintiffs' arguments that their proposed schedule permits the Defendants time to test their experts is inaccurate, and their proposed schedule unfair. Setting a schedule that "begins" Expert Discovery *after* the filing of the motion for class certification is (in Defendants' experience) unprecedented, and wholly inconsistent with the decisions of Courts of Appeals that have recognized that the logic of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) and *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) require that *Daubert* be fully applied to class certification. *See*, *e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 812 (7th Cir. 2012). And Plaintiffs' proposed schedule gives Defendants just 60 days, spread over the holidays, to depose Plaintiffs' experts, prepare responsive expert reports, brief *Daubert* motions against Plaintiffs' experts (who have just been disclosed), and respond to their motion for class certification.

Defendants also believe there is not a need for a deadline to file an ESI protocol, and indeed that setting such a deadline may lead to an unnecessary

imposition on the Court's time.  The Federal Rules of Civil Procedure do not require that any ESI protocol be filed, and requiring this (especially at such an early stage) may result in competing ESI proposals filed with the court raising hypothetical issues about anticipated future document productions.  If, as discovery progresses, any party requires the assistance of the Court to resolve an issue that arises, including an issue pertaining to ESI, that party will be able to do so. Imposing the deadlines that Plaintiffs propose, including for "substantial completion" of document discovery, adds nothing to this, and only creates the potential for wasteful and unripe disputes.

Defendants accordingly respectfully seek entry of a Case Management and Scheduling Order with the proposed schedule set forth below, which, unlike Plaintiffs' proposal, permits *Daubert* motions and dispositive motions before class certification motions.

| Event | Time for Completion |
|---|---|
| Rule 26(a)(1) Disclosures | **August 26, 2019** |
| Fact Discovery Begins | **August 26, 2019** |
| Deadline for Parties' Joint Protocol for Depositions or Statements of Position and Disagreement. | **September 16, 2019** |
| Deadline for Parties' Joint Protocol for Expert Discovery or Statements of Position and Disagreement. | **October 16, 2019** |
| Deadline for Completion of Fact Witness Depositions and All Fact Discovery | **October 1, 2020** |
| Settlement Conference | **October 9, 2020** |

| Expert Discovery Begins | **November 2, 2020** |
|---|---|
| Deadline for Plaintiffs' Expert Disclosures and Reports | **November 2, 2020** |
| Deadline for Defendant's Expert Disclosures and Reports | **March 2, 2021** |
| Deadline for Plaintiffs' Rebuttal Expert Reports | **April 30, 2021** |
| Deadline for Completion of All Expert Discovery | **June 14, 2021** |
| Daubert Motions/Dispositive Motions | **July 15, 2021** |
| Class Certification Motion | **October 1, 2021** |
| Opposition to Class Certification Motion | **November 15, 2021** |
| Reply to Class Certification Motion | **December 15, 2021** |
| Pretrial Disclosures | **January 17, 2022** |
| Motions in Limine | **February 15, 2022** |
| Final Pretrial Conference | **March 21, 2022** |
| Trial | **March 28, 2022** |

Dated:  August 16, 2019          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: /s/ *Steve W. Berman*
Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com

E. Powell Miller
Sharon S. Almonrode
THE MILLER LAW FIRM PC
950 W. University Dr., Ste. 300
Rochester, MI 48307
Telephone: (248) 841-2200
Email: epm@millerlawpc.com
Email: ssa@millerlawpc.com

David S. Stellings
LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Email: dstellings@lchb.com

James E. Cecchi
CARELLA, BYRNE, CECCHI, OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Email: jcecchi@carellabyrne.com

*Plaintiffs' Interim Co-Lead Counsel*

-18-

Dated:  August 16, 2019          DLA PIPER LLP (US)

By: _/s/ Joel A. Dewey_____
            Joel A. Dewey

Joel A. Dewey
Jeffrey M. Yeatman
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4135
joel.dewey@dlapiper.com
jeffrey.yeatman@dlapiper.com


BUSH SEYFERTH & PAIGE PLLC

By: _/s/ Stephanie A. Douglas_____
            Stephanie A. Douglas

Patrick G. Seyferth (P47575)
Stephanie A. Douglas (P70272)
BUSH SEYFERTH & PAIGE PLLC
3001 W. Big Beaver Rd., Ste. 600
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
douglas@bsplaw.com

*Counsel for Defendant Ford Motor Company*

-19-

Dated:  August 16, 2019         CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                By:   */s/ Matthew D. Slater*
                                        Matthew D. Slater

                                Cleary Gottlieb Steen & Hamilton LLP
                                2112 Pennsylvania Ave., N.W.
                                Washington, DC 20037
                                Telephone:   (202) 974-1500
                                Facsimile:    (202) 974-1999
                                mslater@cgsh.com

                                *Counsel for Defendant Robert Bosch LLC*

010607-11/1173553 V1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2019, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Steve W. Berman*
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

010607-11/1173553 V1