IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEN GAMBOA, et al.,

              Plaintiffs,            Case No. 2:18-cv-10106

           v.                 HONORABLE DENISE PAGE HOOD

FORD MOTOR COMPANY, et al.,  MAGISTRATE ELIZABETH A. STAFFORD

             Defendants.

_____

**DEFENDANT FORD MOTOR COMPANY'S MOTION TO
AMEND AND CERTIFY FOR INTERLOCUTORY APPEAL
MARCH 31, 2019 AND AUGUST 27, 2019 ORDERS**

Defendant Ford Motor Company moves the Court under 28 U.S.C.

§ 1292(b) to amend two of its orders to be certified for interlocutory appeal:

- The Court's **March 31, 2019** order granting Plaintiffs' motion to appoint interim class counsel, denying Ford's motion to dismiss the *Gamboa* complaint, and granting Ford's motion to consolidate cases (Dkt. 69); and

- The Court's **August 27, 2019** order denying Plaintiffs' motion to strike and denying Ford's motion to dismiss Plaintiffs' Consolidated Class Action Complaint (Dkt. 98).

As set forth in the accompanying brief, these orders involve controlling

questions of law about which there is substantial ground for difference of opinion,

an immediate appeal of which would materially advance the ultimate termination

of the litigation. *See* 28 U.S.C. § 1292(b).

1

In accordance with E.D. Mich. LR 7.1(a), the undersigned communicated these grounds to opposing counsel on September 10, 2019 by telephone and sought, but did not receive, concurrence in the requested relief.

Ford asks the Court to amend its March 31, 2019 and August 27, 2019 orders to include a certification for interlocutory appeal under 28 U.S.C. § 1292(b).

Respectfully submitted,

By: /s/ Joel A. Dewey
Joel A. Dewey
Jeffrey M. Yeatman
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4135
joel.dewey@dlapiper.com
jeffrey.yeatman@dlapiper.com

By: /s/ Stephanie A. Douglas
Patrick G. Seyferth (P47575)
Stephanie A. Douglas (P70272)
BUSH SEYFERTH PLLC
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
douglas@bsplaw.com

*Attorneys for Defendant Ford Motor Company*

Dated: September 24, 2019

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEN GAMBOA, et al.,

          Plaintiffs,          Case No. 2:18-cv-10106

      v.                HONORABLE DENISE PAGE HOOD

FORD MOTOR COMPANY, et al.,   MAGISTRATE ELIZABETH A. STAFFORD

          Defendants.

_____

**BRIEF IN SUPPORT OF DEFENDANT FORD MOTOR COMPANY'S
MOTION TO AMEND AND CERTIFY FOR INTERLOCUTORY
<u>APPEAL MARCH 31, 2019 AND AUGUST 27, 2019 ORDERS</u>**

## STATEMENT OF ISSUE PRESENTED

Whether this Court should amend and certify for appeal, pursuant to 28 U.S.C. § 1292(b), its March 31, 2019 and August 27, 2019 orders to afford the parties the opportunity to address preemption at the appellate level?

Ford answers:  Yes.
Plaintiffs answer:  No.
This Court should answer:  Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

28 U.S.C. § 1292(b)

*In re Trump*, 874 F.3d 948 (6th Cir. 2017)

*Eberline v. Douglas J. Holdings, Inc.*, No. 14-cv-10887, 2019 WL 989284 (E.D. Mich. Mar. 1, 2019)

*Little v. Louisville Gas & Electric Co.*, 805 F.3d 695 (6th Cir. 2015)

# TABLE OF CONTENTS

STATEMENT OF ISSUE PRESENTED ................................................................. i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................. ii

TABLE OF CONTENTS ...................................................................................... iii

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ................................................................................................1

BACKGROUND ..................................................................................................2

    A.  The March 31, 2019 order on the *Gamboa* plaintiffs' claims. ..................2

    B.  Consolidation of *Ruston*, *Goodroad*, and *Badagliacco* with *Gamboa* ..................................................................................................4

    C.  The August 27, 2019 order on all plaintiffs' claims. ...............................5

ARGUMENT ........................................................................................................6

I.  The Court should amend and certify its March 31, 2019 order to afford the parties the opportunity to address preemption at the appellate level. ................6

    A.  The preemption issues here are "controlling questions of law." ..............6

    B.  There is a substantial ground to differ over the preemption issues. ..........9

        1. Reasonable jurists could find the CAA expressly preempts Plaintiffs' state-law claims. ..............................................................10

        2. Reasonable jurists could conclude that the CAA impliedly preempts the Plaintiffs' state-law claims outright ............................12

        3. Reasonable jurists may find that a state law claim is impliedly preempted where it creates a disclosure requirement that conflicts with federal law. ...............................................................14

    C.  An interlocutory appeal of the preemption issues will materially advance the termination of the litigation ................................................16

II.  The Court should amend and certify its August 27, 2019 order to facilitate appellate review of the preemption issues. .......................................................17

CONCLUSION ..................................................................................................19

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Beshear v. Volkswagen Grp. of Am., Inc.*,
   No. 16-cv-27-GFVT, 2016 WL 3040492 (E.D. Ky. May 25, 2016)....................4

*Buckman Co. v. Plaintiffs' Legal Comm.*,
   531 U.S. 341, 342 (2001)...................................................................16

*California v. Mesa*,
   813 F.2d 960 (9th Cir. 1987)...............................................................17

*Cerjanec v. FCA US, LLC*,
   No. 17-cv-10319, 2018 WL 7152556 (E.D. Mich. Sept. 4, 2018) .....................17

*Chrysler Grp. LLC v. S. Holland Dodge, Inc.*,
   862 F. Supp. 2d 661 (E.D. Mich. 2012)...................................................9

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011)................................................................7

*Eberline v. Douglas J. Holdings, Inc.*,
   No. 14-cv-10887, 2019 WL 989284 (E.D. Mich. Mar. 1, 2019)..................9, 10

*Higgins v. BAC Home Loans Servicing, LP*,
   793 F.3d 688 (6th Cir. 2015)................................................................7

*Hills v. Kentucky*,
   457 F.3d 583 (6th Cir. 2006)................................................................6

*In re Baker & Getty Fin. Servs., Inc.*,
   954 F.2d 1169 (6th Cir. 1992) .............................................................7

*In re City of Memphis*,
   293 F.3d 345 (6th Cir. 2002)...............................................................6

*In re Duramax Diesel Litig.*,
   298 F. Supp. 3d 1037 (E.D. Mich. 2018)................................................11

*In re Lloyd's Am. Tr. Fund Litig.*,
   No. 96-cv-1262, 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ..........................17

*In re Trump*,
   874 F.3d 948 (6th Cir. 2017)..................................................... 6, 7, 10

*In re Vertrue Inc. Mktg. & Sales Practices Litig.*,
   719 F.3d 474 (6th Cir. 2013)................................................................7

iv

*Jackson v. Gen. Motors Corp.*,
    770 F. Supp. 2d 570 (S.D.N.Y. 2011)................................................................11

*Little v. Louisville Gas & Electric Co.*,
    805 F.3d 695 (6th Cir. 2015)..................................................................................7

*LWD PRP Grp. v. Alcan Corp.*,
    600 F. App'x 357 (6th Cir. 2015) .........................................................................7

*Merrick v. Diageo Americas Supply, Inc.*,
    805 F.3d 685 (6th Cir. 2015)..................................................................................7

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009) ...............................................................................................9

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) .............................................................................................11

*Motor & Equip. Mfrs. Ass'n v. EPA*,
    627 F.2d 1095 (D.C. Cir. 1979) ..........................................................................11

*Newsome v. Young Supply Co.*,
    873 F. Supp. 2d 872 (E.D. Mich. 2012)................................................................6

*Phipps v. Wal-Mart Stores, Inc.*,
    792 F.3d 637 (6th Cir. 2015)..................................................................................8

*Pinney Dock & Transp. Corp. v. Penn. Central. Corp.*,
    838 F.2d 1445 (6th Cir. 1988) ..............................................................................9

*Reese v. BP Expl. (Alaska), Inc.*,
    643 F.3d 681 (9th Cir. 2011)................................................................................10

*Reliable Carriers Inc. v. Moving Sites LLC*,
    No. 17-cv-10971, 2018 WL 1477666 (E.D. Mich. Mar. 27, 2018).....................8

*San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*,
    359 U.S. 236 (1959) .............................................................................................13

*Silkwood v. Kerr-McGee Corp.*,
    464 U.S. 238 (1984) .............................................................................................13

*Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*,
    86 F.3d 656 (7th Cir. 1996)....................................................................................7

*United States ex rel. Yanity v. J & B Med. Supply Co.*,
    No. 08-cv-11825, 2013 WL 607827 (E.D. Mich. Feb. 19, 2013) ........................9

*United States v. William Beaumont Hosps.*,
    No. 2:10-cv-13440, 2019 WL 3561917 (E.D. Mich. Aug. 6, 2019) ....................7

*W. Tenn. Chptr. of Assoc. Builders & Contractors, Inc. v. City of Memphis*,
   138 F. Supp. 2d 1015 (W.D. Tenn. 2000)................................................................7

*Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*,
   475 U.S. 282, 288-89 (1986)................................................................13

## **Statutes**

18 U.S.C. § 1961 ................................................................3

28 U.S.C. § 1292(b) ................................................................ 2, 6, 9, 19

## **Regulations**

40 C.F.R. § 2.207 ................................................................15

41 Fed. Reg. 36,902 (Sept. 1, 1976) ................................................................16

## INTRODUCTION

This motion seeks certification to pursue interlocutory appellate review of a federal preemption issue underlying two motions to dismiss Ford has filed in these cases that were initially separate and are now consolidated. Ford initially moved for dismissal of the state-law claims in *Gamboa* on the ground that they are expressly or impliedly preempted by the federal Clean Air Act. On March 31, 2019, this Court denied that motion in an order addressed only to the *Gamboa* action. When the *Gamboa* plaintiffs subsequently joined with additional plaintiffs in a Consolidated Class Action Complaint asserting additional state-law claims, Ford again moved to dismiss, raising the same preemption argument, but this time addressing that argument to new state-law claims asserted by new plaintiffs not involved in *Gamboa*. The Court denied that motion as well. But rather than simply follow its prior ruling and denying the motion on its merits, the Court rejected Ford's new motion as an untimely Motion for Reconsideration of the March 31 *Gamboa* order. Ford has filed a separate Motion for Partial Reconsideration of the August 27 order, requesting that the Court vacate the portion of that order construing Ford's Motion to Dismiss as a motion for reconsideration, and issue a new order resolving Ford's arguments on the merits as to all claims. (*See* Dkt. 106.)

In this motion, Ford respectfully requests that the Court certify the preemption issue underlying both motions for interlocutory appeal under 28 U.S.C. § 1292(b). If the Court grants Ford's Motion for Partial Reconsideration, it would need only to certify the revised August 27 order for interlocutory appeal, because the revised order would address the preemption issues on their merits for all plaintiffs. If the Court denies Ford's Motion for Partial Reconsideration, the Court should then certify *both* the March 31 and August 27 orders for interlocutory review, because the preemption issue was formally addressed on the merits only in the March 31 order, and certifying both orders would be necessary to ensure that the preemption issues are reviewed for all claims in the CCAC.

Whichever procedural course this Court chooses, as this brief details, Ford's preemption argument satisfies the criteria for § 1292(b) certification, because it raises a controlling question of law over which reasonable jurists could disagree, and resolving it would materially advance the litigation.

## BACKGROUND

### A.   The March 31, 2019 order on the *Gamboa* plaintiffs' claims.

This action started when Len Gamboa and five others ("*Gamboa* plaintiffs") alleged that Ford violated federal emissions standards with respect to certain diesel

vehicles, and that those violations gave rise to federal RICO[1] and state consumer-protection claims. (*See* Dkt. 1 ("*Gamboa* complaint").) They claimed that Ford misrepresented or failed to disclose in advertising and marketing materials that those vehicles produce "unlawfully high" emissions in certain "on-road" driving conditions as compared to during the Environmental Protection Agency's ("EPA") laboratory testing procedures. (*See, e.g.*, *id.* ¶¶ 27-32). And they hang their specific claims on the presence of an "illegal" "defeat device" in the subject vehicles, a phrase (the Court agrees) they define exclusively through federal law.

Ford moved to dismiss the entire *Gamboa* complaint, in part because the *Gamboa* plaintiffs' state claims are preempted as inextricably intertwined (and in conflict) with the extensive federal emissions regulatory scheme. Allowing them to stand, Ford argued, undermines the EPA's authority to enforce the Clean Air Act ("CAA") by improperly granting the plaintiffs a role to establish and then administer their own subjective emissions standards. (*See* Dkt. 28.) The Court disagreed, relying on recent district-court decisions in other diesel-emissions cases. *See* Dkt. 69 ("March 31, 2019 order"). None of those diesel-emissions cases have been reviewed by an appellate court, despite those cases' questionable application of the doctrines of express and implied preemption. *See, e.g.*, *Beshear v. Volkswagen Grp. of Am., Inc.*, No. 16-cv-27-GFVT, 2016 WL 3040492, at *3

---

[1] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*

(E.D. Ky. May 25, 2016) ("this jurisdictional question is not necessarily an easy one to resolve").

**B.   Consolidation of *Ruston*, *Goodroad*, and *Badagliacco* with *Gamboa***

In its March 31, 2019 order, the Court consolidated the *Gamboa* complaint with the *Ruston*,[2] *Goodroad*,[3] and *Badagliacco*[4] actions and ordered those plaintiffs to join the *Gamboa* plaintiffs in filing a "consolidated amended complaint" within 30 days of the order. (*Id.*; *see also, e.g.*, *Ruston* Dkt. 33, 34, Consolidation Order and Notice.)

Until then, the *Ruston*, *Goodroad*, and *Badagliacco* plaintiffs had refused to consolidate their actions with the *Gamboa* action, opting instead to "see what the judge does" with the *Gamboa* plaintiffs' claims. (*See* Dkt. 39, 46.) Still, they agreed—and the *Gamboa* plaintiffs acknowledged—that Ford could file a motion in lieu of an answer after any ruling on consolidation. (*See, e.g.*, *Ruston* Dkt. 24, PgID 1312-13; *Gamboa* Dkt. 44, PgID 1886 (stating Ford can "file [a] motio[n] to dismiss in *Ruston* if [it] so desire[s]," and that the Court gave "its imprimatur on the possibility of motions to dismiss in both cases").) And so did the Court. (*See* Dkt. 69, PgID 2371 (contemplating Ford's revived and revised motion to

---

[2] *Ruston, et al. v. Ford Motor Company, et al.*, No. 2:18-cv-11108 (E.D. Mich.)
[3] *Goodroad, et al. v. Ford Motor Company, et al.*, No. 2:18-cv-11900 (E.D. Mich.)
[4] *Badagliacco v. Ford Motor Company, et al.*, No. 2:18-cv-12379 (E.D. Mich.)

dismiss the consolidated pleading, finding it would not prejudice the *Gamboa* plaintiffs).)

### C.   The August 27, 2019 order on all plaintiffs' claims.

The Plaintiffs, now consolidated together, filed their Consolidated Class Action Complaint ("CCAC") on May 1, 2019. Ford moved to dismiss it, preserving its arguments against the *Gamboa* plaintiffs' claims, and challenging the *Ruston*, *Goodroad*, and *Badagliacco* plaintiffs' claims for the first time. (Dkt. 75.) Plaintiffs had specifically agreed to merely delay (not *prevent*) Ford's motion pending the Court's consolidation ruling in *Gamboa*. (*See, e.g.*, *Ruston* Dkt. 24, PgID 1312-13.). Yet, despite that agreement, Plaintiffs moved to strike Ford's motion as an untimely motion for reconsideration of the Court's March 31, 2019 order as to the *Gamboa* plaintiffs' claims. (*See* Dkt. 78.)

The Court agreed with Plaintiffs' reasoning, albeit as a basis to deny Ford's motion, not to strike it. (*See* Dkt. 98 ("August 27, 2019 order").) Ford has moved for reconsideration of the August 27, 2019 order, explaining that the Court's construction of Ford's motion as seeking reconsideration of the ruling on the sufficiency of the superseded *Gamboa* complaint violated the Federal Rules of Civil Procedure and denied Ford its due process right to challenge the claims asserted in the CCAC. (*See* Dkt. 106.)

## ARGUMENT

The Court may certify an order for immediate appeal if, as here, "'[1] the order involves a *controlling question of law* [as] to which there is [2] substantial ground for *difference of opinion* and . . . [3] an immediate appeal may *materially advance the termination of the litigation.*'" *In re Trump*, 874 F.3d 948, 951 (6th Cir. 2017) (quoting 28 U.S.C. § 1292(b)) (emphases in original).[5] Such appeals are "limited to questions that present neat abstract issues of law." *Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006). While not every case involving a contested issue of law calls for interlocutory review, *In re City of Memphis*, 293 F.3d 345, 350 (6th Cir. 2002), "[s]everal cases certified for appeal do not immediately stand out in certain ways as 'exceptional.'" *In re Trump*, 874 F.3d at 952.

**I. The Court should amend and certify its March 31, 2019 order to afford the parties the opportunity to address preemption at the appellate level.**

**A. The preemption issues here are "controlling questions of law."**

The Sixth Circuit has set "a low bar for a determination that a question of law is 'controlling.'" *Newsome v. Young Supply Co.*, 873 F. Supp. 2d 872, 875-76 (E.D. Mich. 2012). The resolution of an issue "need not necessarily terminate an action" to be controlling—it need only, as here, "materially affect the outcome of

---

[5] Unless noted, emphases and alterations are added, and internal quotation marks, citations, and footnotes are omitted.

litigation in the district court." *In re Baker & Getty Fin. Servs., Inc.*, 954 F.2d 1169, 1172 n.8 (6th Cir. 1992); *see also Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., Inc.*, 86 F.3d 656, 658-59 (7th Cir. 1996) ("controlling" is not interpreted literally; issues can be controlling without ending the litigation).

The March 31, 2019 order easily clears the Sixth Circuit's low bar, because "[t]he sufficiency of a complaint is a question of law." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011).[6] Motion-to-dismiss denials "materially affect the outcome of litigation" in their own right. *In re Baker*, 954 F.2d at 1172 n.8; *In re Trump*, 874 F.3d at 951 ("undoubtedly controlling" if "materially affect[s] the outcome of the case"). That's why district courts and the Sixth Circuit are known to certify them for interlocutory appeal.[7] These denials *especially* affect litigation when, as the March 31, 2019 order did here, they

---

[6] *See also United States v. William Beaumont Hosps.*, No. 2:10-cv-13440, 2019 WL 3561917, at *1 (E.D. Mich. Aug. 6, 2019) (granting in part motion to amend and certify for interlocutory appeal); *W. Tenn. Chptr. of Assoc. Builders & Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1018 (W.D. Tenn. 2000) ("[T]he orderly administration of justice is frustrated when parties are forced to grind forward to final judgment before they can challenge the correctness of some isolated, but determinative, question of law.").

[7] *See, e.g.*, *Little v. Louisville Gas & Electric Co.*, 805 F.3d 695 (6th Cir. 2015); *Higgins v. BAC Home Loans Servicing, LP*, 793 F.3d 688 (6th Cir. 2015); *Merrick v. Diageo Americas Supply, Inc.*, 805 F.3d 685 (6th Cir. 2015); *LWD PRP Grp. v. Alcan Corp.*, 600 F. App'x 357 (6th Cir. 2015); *In re Vertrue Inc. Mktg. & Sales Practices Litig.*, 719 F.3d 474 (6th Cir. 2013); *Guy v. Lexington-Fayette Urban Cnty. Gov't*, 488 F. App'x 9 (6th Cir. 2012).

address threshold dispositive questions of law. *See Phipps v. Wal-Mart Stores, Inc.*, 792 F.3d 637, 642 (6th Cir. 2015) (accepting interlocutory jurisdiction to resolve threshold issues); *Reliable Carriers Inc. v. Moving Sites LLC*, No. 17-cv-10971, 2018 WL 1477666, at *2 (E.D. Mich. Mar. 27, 2018) (certifying order addressing a "dispositive issue").

Ford respectfully submits the following threshold questions of law warrant interlocutory review:

1.   Whether Plaintiffs' state law claims, which (a) attempt to enforce either federal emissions standards or another nebulous standard defined only by some purchasers' subjective belief, and (b) hinge on the existence of a federally defined "defeat device" in the subject vehicles, should be dismissed under the expansive preemption provision in Section 209(a) of the CAA?

2.   Whether, even in the absence of an express indication from Congress that the CAA was intended to regulate disclosure obligations to consumers under state law, Plaintiffs' claims for violations of various state consumer protection statutes are impliedly preempted when allowing them to proceed would result in different standards for emissions disclosures in every state, rather than the national standard promulgated by the EPA?

3.   Whether Plaintiffs' state law claims are impliedly preempted because, if successful, they would mandate public disclosure of proprietary, detailed, technical information concerning Auxiliary Emission Control Devices ("AECDs") that federal law expressly shields from such disclosure?

Affirmative answers to these questions would materially affect the case by barring most, if not all, of Plaintiffs' claims. "There can be no serious dispute" that preemption is a "controlling question[] of law." *Chrysler Grp. LLC v. S. Holland*

8

*Dodge, Inc.*, 862 F. Supp. 2d 661, 688 (E.D. Mich. 2012). It makes sense, then, that the Sixth Circuit exercises interlocutory jurisdiction over preemption issues. *See, e.g.*, *Pinney Dock & Transp. Corp. v. Penn. Central. Corp.*, 838 F.2d 1445, 1448-49 (6th Cir. 1988) (certifying case with jurisdictional issues like "federal preemption"); *United States ex rel. Yanity v. J & B Med. Supply Co.*, No. 08-cv-11825, 2013 WL 607827, at *2 (E.D. Mich. Feb. 19, 2013). Because the March 31, 2019 order addresses preemption, it should be certified under 28 U.S.C. § 1292(b).

### B. There is a substantial ground to differ over the preemption issues.

A "substantial ground for difference of opinion" exists when "'the question is difficult, novel and either a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions," or "reasonable jurists might disagree on an issue's resolution.'" *Eberline v. Douglas J. Holdings, Inc.*, No. 14-cv-10887, 2019 WL 989284, at *2 (E.D. Mich. Mar. 1, 2019) (quoting *In re Miedzianowski*, 735 F.3d 383, 384 (6th Cir. 2012)); *accord Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009) (explaining that "district courts should not hesitate to certify an interlocutory appeal" of privilege ruling that "involves a new legal question or is of special consequence").

The questions surrounding the CAA's preemptive effect on state common law claims in the context of diesel emissions are at the heart of the March 31, 2019 order are precisely the kind of "novel and difficult questions of first impression"

that justify interlocutory review. *Reese v. BP Expl. (Alaska), Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (cited with approval in *In re Trump*, 874 F.3d at 952). Especially so because *no* federal appellate court has considered them, and "reasonable jurists might disagree on [their] resolution." *Eberline*, 2019 WL 989284, at \*2 (certifying order for interlocutory appeal and finding controlling legal issue novel "because the Sixth Circuit has not yet had an occasion to consider" it).

### 1.   Reasonable jurists could find the CAA expressly preempts Plaintiffs' state-law claims.

The first controlling question of law is whether Plaintiffs' state-law claims should be dismissed under the express preemption provision set forth in Section 209(a) of the CAA because they (a) attempt to enforce either federal emissions standards or another nebulous standard defined only by subjective belief, and (b) hinge on the existence of a federally defined "defeat device" in the subject vehicles. The Court concluded that Plaintiffs' state law claims are not expressly preempted by the CAA because they "pertain to Ford's alleged fraudulent claims [in advertising] and not emissions standards" (March 31, 2019 order at 19), and they do not require proof that Ford used federally defined defeat devices in its vehicles (March 31, 2019 order at 20-21). Through these holdings, the Court accepted as plausible Plaintiffs' theory that a determination of federal law is not required to find that the subject vehicles produce "unlawfully high" emissions

10

(CCAC, ¶¶ 27-32) because regardless of the federal standards, the real world "NOx emissions levels [of the subject vehicles are] far in excess of what a reasonable consumer would expect." (*See, e.g.*, Dkt. 35 at PgID 1709.)

Respectfully, reasonable minds might differ as to whether Plaintiffs' claims are expressly preempted by the CAA.[8] Plaintiffs' own allegations repeatedly reference EPA standards and, as the Court recognized, their claims hinge on the exact definition of "defeat device" found in federal law. Thus, a reasonable jurist could disagree with the Court's ruling on preemption and find that Plaintiffs' state law claims represent an impermissible end-run around the CAA and other applicable regulations. *See, e.g.*, *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1060 (E.D. Mich. 2018) ("GM customers could conceivably attempt to bring suit against GM and Bosch for noncompliance with EPA emission standards. And there can be no doubt that such a suit would be preempted."). A reasonable jurist

---

[8] *See, e.g.*, *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (holding that preemption clauses which use the phrase "relating to," like the CAA's, have a "broad scope" and "expansive sweep"); *Motor & Equip. Mfrs. Ass'n v. EPA*, 627 F.2d 1095, 1109 (D.C. Cir. 1979) (holding Section 209's broad preemptive sweep serves Congress's purpose of avoiding an anarchic patchwork of federal and state regulatory programs, a prospect which threatened to create nightmares for the manufacturers); *Jackson v. Gen. Motors Corp.*, 770 F. Supp. 2d 570, 576-577 (S.D.N.Y. 2011) (holding that, in the CAA context, "enforcement actions that have any connection with or reference to the control of emissions from motor vehicles are preempted" and that the CAA preempted state tort claims alleging diesel engines were defectively designed to allow excessive emissions), *aff'd sub. nom. Butnick v. Gen. Motors Corp.*, 472 F. App'x 80 (2d Cir. 2012).

could also disagree with the notion that Plaintiffs can be found to have stated a viable (*i.e.*, non-preempted) state law claim complaining of "excess" emissions without first answering: in "excess" of what? The ***only*** comparators identified by Plaintiffs—and the only ones that could plausibly form the basis of a reasonable consumer's beliefs—are emissions levels set by "EPA or CARB regulations." (*See* Dkt. 35 at PgID 1705 (conceding these regulations are a "benchmark for a reasonable consumer").) This is precisely why any claim based on the failure to disclose "excessive" emissions cannot be deemed plausible without reference to federal law, which makes it preempted.

If, on the other hand, the "excessive" determination is somehow not dependent on EPA or California Air Resources Board ("CARB") standards to establish "excessive of what," then Plaintiffs are positing a state-law, consumer-expectation standard for emissions wholly independent from the EPA and CARB standards—which the express preemption provision of the CAA precludes states from developing.

A reasonable jurist could find that Plaintiffs are attempting to enforce precisely the type of emissions standards that the CAA expressly preempts.

### 2. Reasonable jurists could conclude that the CAA impliedly preempts the Plaintiffs' state-law claims outright.

The second controlling question of law is whether Plaintiffs' claims for violations of various state consumer-protection statutes premised on an alleged

failure to disclose "excessive" emissions are impliedly preempted when, as here, allowing them to proceed would result in different emissions standards in every state, rather than the standard promulgated by the EPA. The Court concluded that Plaintiffs' state law claims are not impliedly preempted because Ford failed to "prove that Congress intended for the CAA to regulate the scope of a vehicle manufacturer's obligations to consumers." (March 31, 2019 order at 22.)

Reasonable jurists could disagree with this conclusion, because the doctrine of implied preemption does not require that Ford prove that the CAA actually regulates vehicle manufacturers' obligations to consumers. Instead, implied preemption can exist "where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Imposing additional state-law remedies for purported federal-law violations creates "a conflict with federal policy in that it involves allowing two law-making sources to govern." *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236, 247 (1959); *Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 288-89 (1986) (a state law imposing a "supplemental sanction for violations" of a federal statute is preempted, because every additional state remedy "incrementally diminishes" the federal agency's control over enforcement of the federal statute and "thus further detracts from the integrated scheme of regulation

created by Congress"). Plaintiffs here are asserting state-law misrepresentation claims based on purported non-compliance with federal emissions laws, which would in effect establish a state law standard of "consumer expectations" regarding emissions, ultimately resulting in a patchwork of requirements across the country. Such an approach would lead to confusion for consumers, place obstacles in the way of manufacturers, and frustrate the federal system set forth in the CAA to provide consistent information and testing relating to emissions for new automobiles. This outcome is precisely the type of scenario where implied preemption applies.

### 3. Reasonable jurists may find that a state law claim is impliedly preempted where it creates a disclosure requirement that conflicts with federal law.

The third controlling issue is whether Plaintiffs' state law claims are impliedly preempted because they would require affirmative disclosure to the public of proprietary, detailed technical information that is shielded by federal law.

The Court held that state consumer-protection law imposes on Ford "a duty to disclose [to consumers] information about the defeat devices that were installed in their vehicles[.]"[9] (March 31, 2019 order at 31.) This alleged state law duty runs afoul of federal law because the theorized consumer-expectation standard of

---

[9] This holding appears inconsistent with the Court's ruling that Plaintiffs' state law claims are not preempted because they are *not contingent on the existence of a defeat device.* (March 31, 2019 order at 31.)

"excessive" emissions under on-road conditions would require manufacturers to make affirmative disclosure of any Auxiliary Emission Control Devices ("AECDs") present on its vehicles. Federal law, however, specifically authorizes motor vehicle manufacturers to disclose AECDs to EPA or CARB *on a confidential basis*, and to shield such information from competitors and the general public alike because of its clear proprietary, competitive value. *See* 40 C.F.R. § 2.207 (providing for EPA class confidentiality determinations).

AECD descriptions necessarily entail the disclosure of detailed technical information with respect to the manufacturer's vehicle control strategies, software, and calibrations. Information of this nature is proprietary to each manufacturer and could result in competitive harm if disclosed publicly. Therefore, EPA and CARB permit AECD descriptions (among other things) to be submitted in a portion of the emissions certification application designated as confidential. This arrangement enables EPA to evaluate the appropriateness of each manufacturer's AECDs without compromising the proprietary strategies and information developed by each manufacturer at considerable expense. EPA has determined—after a careful balancing designed to "protect[] the interest of the businesses which furnish information to EPA, the interests of the members of the public who request that EPA disclose such information, and the interests of EPA in carrying out its

statutory mission"—that "the public interest would not be served by disclosure." 41 Fed. Reg. 36,902, 36,902 (Sept. 1, 1976).

The Court's ruling holds that state law may compel Ford to speak where federal law allows it to remain silent. A reasonable jurist could find this raises an issue of conflict preemption, particularly where the alleged duty to disclose is premised on the claimed existence of a "defeat device." The Court's ruling on Ford's disclosure obligations under state law renders it impossible for Ford to exercise the right afforded to it by the CAA and EPA rules to keep AECD information shielded from competitors. Congress left no room for a private plaintiff to regulate in the EPA's stead or use state law as a vehicle to override those rules and regulations. Accordingly, a reasonable jurist could find that requiring Ford to disclose its AECDs to the public conflicts with the intent of Congress and, thus, is impliedly preempted. *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 342 (2001).

## C. An interlocutory appeal of the preemption issues will materially advance the termination of the litigation

A holding from Sixth Circuit that Plaintiffs' 55 state-law claims are expressly or impliedly preempted would erase the claims from the CCAC, and would do so at the *outset* of the case, well before costly discovery, dispositive-

motion practice, and trial proceedings in these four recently consolidated actions.[10]

*See, e.g.*, *Cerjanec v. FCA US, LLC*, No. 17-cv-10319, 2018 WL 7152556, at *3 (E.D. Mich. Sept. 4, 2018). It is precisely *because* of the potential avoidance of protracted and expensive litigation that courts "more freely" grant motions for interlocutory appeal "in so-called 'big' cases." *In re Lloyd's Am. Tr. Fund Litig.*, No. 96-cv-1262, 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997).

There is another reason why close (and immediate) appellate scrutiny will materially advance this and the other pending suits: they collectively underscore the clash between the federal government's power to regulate emissions and the states' ability to regulate conduct occurring within their borders. *Cf. California v. Mesa*, 813 F.2d 960, 963 (9th Cir. 1987) ("federalism concerns justify review by mandamus").

## II. The Court should amend and certify its August 27, 2019 order to facilitate appellate review of the preemption issues.

Up until Plaintiffs filed their June 17, 2019 motion to strike, the parties *and* the Court anticipated that Ford would file a Rule 12(b)(6) motion challenging the sufficiency of the CCAC, which after all involved plaintiffs and claims *not*

---

[10] The Sixth Circuit's rulings could also benefit the parties to the pending diesel-emission suits against other manufacturers.

involved in the *Gamboa* action.[11] The August 27, 2019 order, however, refused to treat Ford's motion as the anticipated Rule 12(b)(6) motion, instead erroneously treating it as a motion to reconsider the prior ruling limited to the *Gamboa* action. As argued elsewhere and incorporated here by reference (*see* Dkt. 87, 95, 106), Ford has an unassailable due-process right to seek dismissal of the CCAC under Rule 12(b)(6), both to preserve its arguments as to the *Gamboa* plaintiffs' renewed claims, and to challenge the *new* claims asserted by the 21 other plaintiffs whose claims were never subject to a Rule 12 motion or responsive pleading.

The Court's refusal to address Ford's motion to dismiss on its merits creates needless uncertainty about the appellate status of the August 27 order for purposes of appellate review. As a functional matter, the August 27 order applies the March 31 *Gamboa* ruling to the other CCAC plaintiffs and claims. But because the August 27 ruling does not *formally* deny Ford's motion to dismiss those claims on the merits, the Sixth Circuit arguably could not address the merits of the

---

[11] *See, e.g.*, Dkt. 39 & 46 (Ford's motions to consolidate), 44 (the *Gamboa* plaintiffs' statement that Ford can "file [a] motio[n] to dismiss in *Ruston* if [it] so desire[s]," and that the Court gave "its *imprimatur* on the possibility of motions to dismiss in both cases"), 69 (the Court's contemplation of Ford's revived and revised motion to dismiss the consolidated pleading, finding it would not prejudice the Gamboa plaintiffs); *Ruston* Dkt. 24 (the *Ruston* plaintiffs' agreement that Ford could file a motion in lieu of an answer after any ruling on consolidation); *see generally Badagliacco* Dkt. 2 (the *Badagliacco* plaintiffs' stipulated order transferring *Goodroad* from the Northern District of California to "consolidat[e *Goodroad*] with the two earlier filed cases"—*Gamboa* and *Ruston*).

preemption issues in a § 1292(b) review of the current August 27 order. If that ruling remains unamended, Ford requests certification of the March 31 order to ensure the preemption issue is presented on its merits to the Sixth Circuit.

### CONCLUSION

For the reasons stated above and in its recently filed Motion for Reconsideration, Ford respectfully requests that the Court amend and certify for interlocutory appeal under 28 U.S.C. § 1292(b) its March 31, 2019 order denying Ford's motion to dismiss the *Gamboa* plaintiffs' claims, and its August 27, 2019 order denying Ford's motion to dismiss the CCAC.

Respectfully submitted,

By: /s/ Joel A. Dewey
Joel A. Dewey
Jeffrey M. Yeatman
DLA PIPER LLP (US)
6225 Smith Avenue
Baltimore, Maryland 21209
(410) 580-4135
joel.dewey@dlapiper.com
jeffrey.yeatman@dlapiper.com

By: /s/ Stephanie A. Douglas
Patrick G. Seyferth (P47575)
Stephanie A. Douglas (P70272)
BUSH SEYFERTH PLLC
100 W. Big Beaver Rd., Ste. 400
Troy, MI 48084
(248) 822-7800
seyferth@bsplaw.com
douglas@bsplaw.com

*Attorneys for Defendant Ford Motor Company*

Dated: September 24, 2019