UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LEN GAMBOA, *et al.*, individually and on behalf of all others similarly situated,<br><br>          Plaintiffs,<br><br>      v.<br><br>FORD MOTOR COMPANY, *et al.*,<br><br>          Defendants. | No. 2:18-cv-10106-DPH-EAS<br><br>Chief Judge Denise Page Hood<br>Magistrate Judge Elizabeth A. Stafford |

**PLAINTIFFS' OPPOSITION TO DEFENDANT ROBERT BOSCH GMBH's
MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES PRESENTED.................................................................vi

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
    AUTHORITY ............................................................................ vii

I.    INTRODUCTION ....................................................................1

II.    ARGUMENT............................................................................3

    A.    Plaintiffs validly served Bosch GmbH.....................................3

    B.    Plaintiffs state a valid claim under RICO. ...............................4

        1.    The Clean Air Act does not bar Plaintiffs' RICO claims. ..........4

        2.    There is a direct relationship between Bosch GmbH's
            wrongful conduct and Plaintiffs' injury, as required for
            RICO Standing. ............................................................9

        3.    Plaintiffs adequately allege that Bosch GmbH engaged in
            a pattern of racketeering activity. ...........................................15

        4.    Plaintiffs allege a cognizable RICO injury. ..............................21

III.    CONCLUSION.........................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Apple Inc. v. Pepper*,
    139 S. Ct. 1514 (2019)...................................................................13

*In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*,
    804 F.3d 633 (3d Cir. 2015) ....................................................14, 15

*Ayres v. Gen. Motors Corp.*,
    234 F.3d 514 (11th Cir. 2000) ...........................................................7

*Bledsoe v. FCA US LLC*,
    2019 WL 1379588 (E.D. Mich. Mar. 27, 2019)...............................22

*Bridge v. Phoenix Bond & Indem. Co.*,
    553 U.S. 639 (2008)....................................................................9, 12

*Brown v. First Tenn. Bank Nat'l Ass'n*,
    753 F. Supp. 2d 1249 (N.D. Ga. 2009)...............................................8

*Callahan v. A.E.V., Inc.*,
    182 F.3d 237 (3d Cir. 1999) ..............................................................9

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices &*
    *Prods. Liab. Litig.*,
    921 F.3d 617 (6th Cir. 2019) ...................................................*passim*

*In re ClassicStar Mare Lease Litig.*,
    727 F.3d 473 (6th Cir. 2013) ....................................................10, 11

*Cleveland v. United States*,
    531 U.S. 12 (2000)...........................................................................18

*Counts v. Gen. Motors, LLC*,
    2018 WL 5264194 (E.D. Mich. Oct. 23, 2018)..........................*passim*

*Crosby v. Twitter, Inc.*,
    921 F.3d 617 (6th Cir. 2019) ..........................................................10

*Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*,
    746 F. Supp. 170 (D.D.C. 1990) .......................................................................7, 8

*In re Duramax Diesel Litig.*,
    298 F. Supp. 3d 1037 (E.D. Mich. 2018) ....................................................*passim*

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices &*
    *Antitrust Litig.*,
    336 F. Supp. 3d 1256 (D. Kan. 2018)...............................................................15

*In re Gen. Motors LLC Ignition Switch Litig.*,
    2016 WL 3920353 (S.D.N.Y. July 15, 2016)....................................................24

*Heinrich v. Waiting Angels Adoption Servs., Inc.*,
    668 F.3d 393 (6th Cir. 2012) .............................................................................19

*Holmes v. Sec. Inv'r Prot. Corp.*,
    503 U.S. 258 (1992)......................................................................................11, 12

*In re Insulin Pricing Litig.*,
    2019 WL 643709 (D.N.J. Feb. 15, 2019) ....................................................14, 15

*Israel Travel Advisory Serv., Inc. v. Israel Identity Tours*,
    61 F.3d 1250 (7th Cir. 1995) .............................................................................12

*Kemp v. AT&T*,
    393 F.3d 1354 (11th Cir. 2004) .........................................................................21

*Kriss v. Bayrock Grp. LLC*,
    2017 WL 1901966 (S.D.N.Y. May 8, 2017) ....................................................21

*Marrero-Rolon v. Autoridad de Energia Electrica de P.R.*,
    2015 WL 5719801 (D.P.R. Sept. 29, 2015) .....................................................14

*McCarthy v. Recordex Serv.*,
    80 F.3d 842 (3d Cir. 1996) ..........................................................................14, 15

*McLaughlin v. Am. Tobacco Co.*,
    522 F.3d 215 (2d Cir. 2008) ..............................................................................24

*In re Mercedes-Benz Emissions Litig.*,
    2019 WL 413541 (D.N.J. Feb. 1, 2019)............................................5, 11, 15, 22

*Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
  453 U.S. 1 (1981) ................................................................................6

*Powell v. Lennon*,
  914 F.2d 1459 (11th Cir. 1990) ............................................................6

*Randolph v. IMBS, Inc.*,
  368 F.3d 726 (7th Cir. 2004) ................................................................4

*Ray v. Spirit Airlines, Inc.*,
  767 F.3d 1220 (11th Cir. 2014) ..........................................................5

*Reiter v. Sonotone, Corp.*,
  442 U.S. 330 (1979)......................................................................23, 24

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993).............................................................................16

*S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*,
  912 F. Supp. 2d 404 (E.D. La. 2012)....................................................9

*Salinas v. United States*,
  522 U.S. 52 (1997)...............................................................................16

*Tri-State Express, Inc. v. Cummins Engine Co.*,
  2000 U.S. Dist. LEXIS 23564 (D.D.C. Sept. 11, 2000)....................24

*Trollinger v. Tyson Foods, Inc.*,
  370 F.3d 602 (6th Cir. 2004) ............................................................14

*United States v. Jamieson*,
  427 F.3d 394 (6th Cir. 2005) ............................................................20

*United States v. Lloyd*,
  807 F.3d 1128 (9th Cir. 2015) ..........................................................21

*United States v. Murphy*,
  836 F.2d 248 (6th Cir. 1988) ............................................................19

*United States v. Sadler*,
  750 F.3d 585 (6th Cir. 2014) ............................................................18

*United States v. Shields*,
844 F.3d 819 (9th Cir. 2016) ...............................................................21

*United States v. Stewart*,
728 F. App'x 651 (9th Cir. 2018) .......................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods.
Liab. Litig.*,
2017 WL 4890594 (N.D. Cal. Oct. 30, 2017) ...................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.
Liab. Litig.*,
349 F. Supp. 3d 881 (N.D. Cal. 2018).......................................15, 22

*Williams v. Dow Chem. Co.*,
255 F. Supp. 2d 219 (S.D.N.Y. 2003) ..............................................19

*Williams v. Duke Energy Int'l, Inc.*,
681 F.3d 788 (6th Cir. 2012) .............................................................20

*Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc.*,
2015 WL 5093785 (E.D. Mich. Aug. 28, 2015)................................15

## STATUTES

18 U.S.C. § 1961 ..........................................................................................5

42 U.S.C. § 7401 ..........................................................................................5

42 U.S.C. § 7604 ...................................................................................2, 5, 6

## STATEMENT OF ISSUES PRESENTED

1. Plaintiffs served Bosch GmbH (1) pursuant to Magistrate Judge Stafford's October 25, 2019 Order authorizing service by email [Dkt. 127, 130, 133, 134], and (2) pursuant to Magistrate Judge Stafford's November 15, 2019 Order on Reconsideration authorizing service by delivery to Cleary Gottlieb in the U.S. and Germany. Dkt. 135, 139. Both orders authorized service pursuant to Fed. R. Civ. P. 4(f)(3). Bosch GmbH did not object to the October 25 Order. Did Plaintiffs validly serve Bosch GmbH?

2. Does the Clean Air Act preempt or otherwise displace Plaintiffs' RICO claims when (a) those claims are not predicated on a violation of the CAA, and (b), even if they were, the CAA contains a Savings Clause that preserves "any right which any person (or class of persons) may have under any statute"?

3. Plaintiffs allege that "[b]ut for Bosch LLC [and Bosch GmbH] working with Ford to make the defeat devices, Plaintiffs would not have overpaid for the vehicles." Dkt. 69 at 49. Plaintiffs further allege that "Bosch entities participated not just in the development of the defeat devices, but also in the scheme to prevent U.S. regulators from uncovering the device's true functionality." *Id.* Are Plaintiffs' RICO claims against Bosch GmbH barred by the indirect purchaser rule under antitrust laws, solely because they did not purchase any product from Bosch GmbH?

4. Plaintiffs allege that Defendants knowingly entered into and implemented a scheme to sell and promote certain Ford vehicles through fraudulent omissions. Bosch GmbH provided defeat devices that turn on emissions controls during testing but turn off the emissions controls when a testing environment is not detected. And Ford marketed the vehicles without revealing the use of such defeat devices. As a result of this scheme, Plaintiffs paid too much for the vehicles. Do Plaintiffs adequately allege a pattern of racketeering activity by Bosch GmbH?

5. Plaintiffs' claims under RICO seek recovery for the economic loss they incurred from overpayment of approximately $8,400 as a result of Defendants' alleged RICO violations. Did the Court correctly rule previously, as six other courts in similar diesel-emissions cases have held, that Plaintiffs adequately allege RICO injury?

## STATEMENT OF CONTROLLING OR
## MOST APPROPRIATE AUTHORITY

Section II(A) – *Plaintiffs validly served Bosch GmbH.*

Authorities: Magistrate Judge Stafford's October 25, 2019 Order authorizing service by email (Dkt. 127, 130, 133, 134); Magistrate Judge Stafford's November 15, 2019 Order on Reconsideration authorizing service by delivery to Cleary Gottlieb in the U.S. and Germany (Dkt. 135, 139); Plaintiffs' Opposition (Dkt. 152) to Bosch GmbH's objection to the November 15 Order on Reconsideration.

Section II(B)(1) – *Plaintiffs do not seek to remedy violations of the Clean Air Act through their RICO claims.*

Authorities: Order (Dkt. 69) at 39 (denying motion to dismiss in which "Ford claims that Plaintiffs' [RICO] claim is predicated on a preempted fraud-on-the-regulators theory. According to Ford, because Plaintiffs allege that Ford and Bosch Defendants formed an enterprise for the express purpose of fraudulently obtaining certificates of conformity ('COC') from the EPA in order to sell vehicles, this constitutes an attempt to privately enforce the CAA, and is preempted and within exclusive province of the EPA."); *Counts v. Gen. Motors, LLC*, 2018 WL 5264194, at \*12 (E.D. Mich. Oct. 23, 2018) (rejecting Bosch's argument that CAA barred plaintiffs' RICO claim in emissions-fraud case); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1088 (E.D. Mich. 2018) ("Plaintiffs' RICO claim is not primarily premised on proof of violation of EPA regulations and thus is cognizable. The alleged common purpose at the heart of the RICO scheme is the deception of consumers. The alleged injury is overpayment by consumers…. Plaintiffs' RICO claim is not an attempt to obtain a remedy which is exclusively within the purview of the EPA."); *In re Mercedes-Benz Emissions Litig.*, 2019 WL 413541, at \*13 (D.N.J. Feb. 1, 2019) (rejecting Mercedes's similar argument that "because Plaintiffs' RICO claim centers around a fraud-on-the-regulators theory, Plaintiffs have failed to meet RICO's proximate cause requirement").

Section II(B)(2) – *Plaintiffs' RICO claim is not barred by the indirect-purchaser rule applied in antitrust cases.*

Authorities: Order (Dkt. 69) at 48–49 (rejecting Bosch LLC's argument that "even though Plaintiffs allege that Bosch LLC produced the Electronic Diesel Control Unit 17 and sold it to Ford, there were additional factors that substantially caused Plaintiffs' alleged injuries"); *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639,

657–58 (2008) ("Nor is first-party reliance necessary to ensure that there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles articulated in Holmes and Anza. Again, this is a case in point. Respondents' alleged injury—the loss of valuable liens—is the direct result of petitioners' fraud. It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens."); *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th Cir. 2013) ("Plaintiffs must show 'some direct relation between the injury asserted and the injurious conduct alleged.'") (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)); *Firestone v. Galbreath*, 976 F.2d 279, 285 (6th Cir. 1992) (same).

Section II(B)(3) – *Plaintiffs adequately allege Bosch GmbH's participation in a pattern of racketeering activity.*

Authorities: Order (Dkt. 69) at 49 ("But for Bosch LLC working with Ford to make the defeat devices, Plaintiffs would not have overpaid for the vehicles."); 18 U.S.C. § 1962(c) (each defendant need only "participate, directly or indirectly," in enterprise's affairs); *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) ("the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, … but *some* part in directing the enterprise's affairs is required"); *Salinas v. United States*, 522 U.S. 52, 63–64 (1997) (liability for a RICO conspiracy under section 1962(d) may be imposed "even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other."); Order (Dkt. 69) at 43, 44–45 (rejecting argument that "Plaintiffs must allege that Bosch LLC had an independent duty to disclose information to them," because the Sixth Circuit has "repeatedly confirmed that concealment of material facts can constitute a fraudulent scheme sufficient to establish RICO liability," so that "Plaintiffs were not required to prove that Bosch LLC had a duty to disclose any information about the defeat devices"); *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 802 (6th Cir. 2012) ("As Plaintiffs have pled, Duke's [mail and wire] fraud was in asserting through the mail that all customers had to pay 'mandatory and unavoidable' electricity charges, implying that all customers paid the same rate (which they were required to do under the RPA). Thus, Plaintiffs allege that Duke's non-disclosure of the side agreements constitutes fraud."); *Duramax*, 298 F. Supp. 3d at 1086 ("to the extent Defendants may have had no duty to disclose the operation of the Duramax engine's emissions technology in the abstract, a duty arose when they created the appearance that it

- viii -

was a 'clean diesel' engine").

Section II(B)(4) – *Plaintiffs adequately allege RICO injury*.

Authorities: Dkt. 69 at 37 ("Under *Duramax*, Plaintiffs' claims are premised on overpayment that occurred at the time of their injuries and are not speculative. Plaintiffs have adequately alleged that they have cognizable injuries, and therefore standing."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 342 (1979) ("where petitioner alleges a wrongful deprivation of her money because the price of the hearing aid she bought was artificially inflated by reason of respondents' anticompetitive conduct, she has alleged an injury in her 'property' under § 4" of the Clayton Act); *Bledsoe v. FCA US LLC*, 378 F. Supp. 3d 626, 640–41 (E.D. Mich. 2019) (consumer plaintiffs in diesel-emission case adequately alleged RICO injury); *Mercedes-Benz*, 2019 WL 413541, at *9–12 (consumer plaintiffs in diesel-emission case adequately alleged RICO injury); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 349 F. Supp. 3d 881, 904–08 (N.D. Cal. 2018) (consumer plaintiffs in diesel-emission case adequately alleged RICO injury); *Duramax*, 298 F. Supp. 3d at 1067–73 (consumer plaintiffs in diesel-emission case adequately alleged RICO injury); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 957–64 (N.D. Cal. 2018) (*FCA EcoDiesel*) (consumer plaintiffs in diesel-emission case adequately alleged RICO injury); *Counts*, 2018 WL 5264194, at *3–5 (consumer plaintiffs in diesel-emission case adequately alleged RICO injury).

010607-11/1220307 V1

## I.    INTRODUCTION

Defendant Robert Bosch GmbH's motion to dismiss the Complaint[1] should

be denied, just as this Court denied motions to dismiss by Ford and Bosch LLC.[2]

As this Court explained in its order denying those motions, "Plaintiffs are suing

Ford, Bosch GmbH, and Bosch LLC for allegedly selling vehicles that were not

sold to consumers as advertised." Dkt. 69 at 5. This Court also accurately

summarized Plaintiffs' factual and legal claims, which remain the same in the

Consolidated Complaint. *See id.* at 5–8. In short, Plaintiffs allege that Bosch

GmbH, along with Bosch LLC, knowingly devised and implemented a scheme to

help Ford sell tens of thousands of vehicles rigged with defeat devices that Bosch

GmbH designed and manufactured, and that shut off or substantially reduced the

effectiveness of emission controls while the vehicles were on the road.[3]

The Court should deny Bosch GmbH's motion to dismiss, largely for the

same reasons it denied the motions to dismiss filed by Ford and Bosch LLC. *First*,

Plaintiffs validly served Bosch GmbH pursuant to Magistrate Judge Stafford's

---

[1] "Complaint" herein refers to Plaintiffs' Consolidated Class Action Complaint, Dkt. 73. Citations to "¶" refer to the Complaint unless otherwise noted.

[2] This Court denied Ford's and Bosch LLC's initial motions to dismiss. Dkt. 69. After Plaintiffs filed their Complaint, Ford and Bosch LLC moved for dismissal. Dkt. 75, 76. This Court again denied their motions. Dkt. 98.

[3] In this Opposition, "Bosch" refers to both Robert Bosch GmbH and Robert Bosch LLC; "Bosch GmbH" refers to Robert Bosch GmbH; and "Bosch LLC" refers to Robert Bosch LLC.

orders. Bosch GmbH does not show any basis to overturn the Rule 4(f)(3) service orders.

*Second*, the Clean Air Act (CAA) does not bar Plaintiffs' RICO claims. The CAA does not regulate fraud, let alone provide a private remedy for fraud. And the CAA allows RICO fraud claims through a broad Citizen Suit Savings Clause. 42 U.S.C. § 7604(e). Ford made the same argument in its initial motion to dismiss, which this Court denied.

*Third*, the RICO claims are not barred by the indirect purchaser rule applied in antitrust cases when plaintiffs solely seek passed-on, derivative damages. That rule does not apply here, where Plaintiffs allege they were directly defrauded by Defendants into purchasing defective vehicles. No court has ever applied the indirect purchaser rule to bar such RICO claims. To the contrary, courts in emissions-fraud cases uniformly hold that the plaintiffs in such cases adequately allege a direct relation between the injury asserted and the injurious conduct alleged, as required by RICO.

*Fourth*, Plaintiffs adequately allege that Bosch GmbH participated in the RICO enterprise's pattern of racketeering activity. As this Court explained in denying Bosch LLC's motion to dismiss, "But for Bosch LLC working with Ford to make the defeat devices, Plaintiffs would not have overpaid for the vehicles." Dkt. 69 at 49. Similarly, Plaintiffs allege that Bosch GmbH, along with Bosch

LLC, designed and manufactured the defeat devices in all vehicles at issue, which suffices to show Bosch GmbH's liability under RICO. Moreover, in denying Bosch LLC's initial motion to dismiss, this Court rejected the argument that Plaintiffs must allege that the Bosch entities had an independent duty to disclose the truth to Plaintiffs. Dkt. 69 at 43. Bosch GmbH provides no basis for the Court to reconsider and reverse that ruling.

## II.    ARGUMENT

### A.    Plaintiffs validly served Bosch GmbH.

It is a matter of record that Plaintiffs served Bosch GmbH (1) pursuant to Magistrate Judge Stafford's October 25, 2019 Order authorizing service by email [Dkt. 127, 130, 133, 134], and (2) pursuant to Magistrate Judge Stafford's November 15, 2019 Order on Reconsideration authorizing service by delivery to Cleary Gottlieb in the U.S. and Germany [Dkt. 135, 139]. Both orders authorized service pursuant to Fed. R. Civ. P. 4(f)(3). Bosch GmbH did not object to the October 25 Order, and Plaintiffs incorporate by reference here their opposition (Dkt. 152) to Bosch GmbH's objection to the November 15 Order on Reconsideration. For the reasons stated in Plaintiffs' opposition, service was validly ordered and carried out, and Bosch GmbH does not show any basis to overturn either of the Rule 4(f)(3) service orders. As such, the Court should deny Bosch GmbH's motion to dismiss under Fed. R. Civ. P. 12(b)(2).

**B.      Plaintiffs state a valid claim under RICO.**

**1.      The Clean Air Act does not bar Plaintiffs' RICO claims.**

Bosch GmbH incorrectly claims that the Clean Air Act bars the RICO claims, asserting that "plaintiffs may not convert alleged violations of comprehensive regulatory schemes into treble-damages RICO claims." Dkt. 153 at 7. This sounds like a preemption argument, but one federal law (CAA) cannot "preempt" another (RICO). *See Randolph v. IMBS, Inc.*, 368 F.3d 726, 730 (7th Cir. 2004). Instead, Bosch GmbH implicitly makes the more oblique contention that, in enacting the CAA, Congress—without saying a word on the topic— intended to displace any RICO action in which the defendant directly defrauded consumers, merely because the EPA was also misled. *See id.* ("[T]he right question is whether one [federal statute] implicitly repeals the other—and repeal by implication is a rare bird indeed."). Ford made the same argument in its motion to dismiss the initial complaint in this action, but this Court denied that motion.[4] Other courts in this District and other Districts have also rejected the argument.[5]

---

[4] *See* Dkt. 69 at 39 ("According to Ford, because Plaintiffs allege that Ford and Bosch Defendants formed an enterprise for the express purpose of fraudulently obtaining certificates of conformity ('COC') from the EPA in order to sell vehicles, this constitutes an attempt to privately enforce the CAA, and is preempted and within exclusive province of the EPA.").

[5] *Counts v. Gen. Motors, LLC*, 2018 WL 5264194, at *12 (E.D. Mich. Oct. 23, 2018) (rejecting argument by Bosch that the CAA barred plaintiffs' RICO claim); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1088 (E.D. Mich. 2018) ("Plaintiffs' RICO claim is not primarily premised on proof of violation of EPA

Those decisions are correct, because the CAA allows RICO fraud claims through a broad Citizen Suit Savings Clause, which Bosch GmbH ignores and which preserves remedies like RICO: "Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief[.]" 42 U.S.C. § 7604(e). RICO was on the books when Congress enacted the CAA[6] and was among the statutes preserved by the Savings Clause. This ends the inquiry. *Cf. Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1221 (11th Cir. 2014) ("Because federal laws do not preempt other federal laws, subsequent legislation could preclude Plaintiffs' claims only if Congress had repealed the provisions of RICO, at least insofar as they authorized Plaintiffs' actions.").

Moreover, Bosch GmbH undermines its own argument when it asserts that "CAA was designed to promote air quality in the broad public interest, *see* 42

---

regulations and thus is cognizable. The alleged common purpose at the heart of the RICO scheme is the deception of consumers. The alleged injury is overpayment by consumers…. Plaintiffs' RICO claim is not an attempt to obtain a remedy which is exclusively within the purview of the EPA."). *See also In re Mercedes-Benz Emissions Litig.*, 2019 WL 413541, at *13 (D.N.J. Feb. 1, 2019) (rejecting Mercedes' argument that "because Plaintiffs' RICO claim centers around a fraud-on-the-regulators theory, Plaintiffs have failed to meet RICO's proximate cause requirement"), *vacated on other grounds*, 2020 WL 115529 (3d Cir. Jan. 10, 2020); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 295 F. Supp. 3d at 996–97 (N.D. Cal. 2018) (*FCA EcoDiesel*) (holding that similar RICO claims were not barred by the CAA).

[6] RICO was enacted on October 15, 1970. 18 U.S.C. § 1961. The CAA was enacted two months later on December 31, 1970. *See* 42 U.S.C. § 7604.

U.S.C. § 7401, and was not designed to protect purchasers of vehicles." Dkt. 153 at 11. That limited focus of the CAA is why the Savings Clause allows this action for fraud, which the CAA does not regulate. As the Savings Clause makes plain, Bosch GmbH is not shielded from RICO liability just because its scheme to deceive consumers touched on vehicle emissions. For this reason, whether the CAA contains a private right of action is irrelevant.[7]

Bosch GmbH undermines its argument further when it acknowledges that the Clean Air Act only allows private actions "to compel regulatory action, not for damages." Dkt. 153 at 10–11 (citing 42 U.S.C. § 7604(b)(1)). Bosch GmbH ignores that section 7604 does not provide *any* private action for fraud, and that section 7604(e)'s Savings Clause states that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law … to seek any other relief." 42 U.S.C. § 7604(e).[8]

---

[7] Therefore, cases cited by Bosch GmbH in which courts held that various federal statutes do not provide private rights of action are irrelevant. *See Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1 (1981) (Federal Water Pollution Control Act does not provide any private right of action and preempts federal common law of nuisance); *Powell v. Lennon*, 914 F.2d 1459, 1462 n.7 (11th Cir. 1990) (no private right of action under CAA).

[8] In a footnote, Bosch GmbH argues, without even trying to explain why it supports dismissal, that "approximately two years have passed since Plaintiffs first made their allegations public in the Gamboa Complaint, and the EPA and CARB have taken no action with respect to the Subject Vehicles. The silence of the regulators speaks volumes about the baselessness of Plaintiffs' allegations." Dkt. 153 at 11 n.6. Bosch GmbH provides no authority for the implicit proposition that silence by regulators precludes this litigation.

Bosch GmbH ignores the Savings Clause and the decisions that uniformly reject its argument. Instead, it relies on three inapposite cases to incorrectly argue that courts "have recognized that plaintiffs may not convert alleged violations of comprehensive regulatory schemes into treble-damages RICO claims." Dkt. 153 at 7. Bosch GmbH first cites *Ayres v. Gen. Motors Corp.*, in which the plaintiffs did not allege any "misrepresentation made by the Defendants to them related to the alleged defect; in fact, the Defendants made no communications at all to the Plaintiffs." 234 F.3d 514, 516 (11th Cir. 2000) (footnote omitted). *Duramax* distinguished *Ayres*, because "Plaintiffs' allegations are not dependent upon proof of violation of federal emission regulations," and the "common purpose at the heart of the RICO scheme is the deception of consumers." 298 F. Supp. 3d at 1088.

In the second inapposite case cited by Bosch GmbH, the district court explained that "the fraudulent scheme alleged by the plaintiffs is an underpayment of wages and fringe benefits due them pursuant to the SCA. Plaintiffs' RICO claims are all premised on alleged violations of the SCA. However, the SCA expressly assigns the responsibility for determining and enforcing wage levels and other employee benefits to DOL." *Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 746 F. Supp. 170, 176 (D.D.C. 1990), *aff'd*, 941 F.2d 1220 (D.C. Cir. 1991). On appeal, the D.C. Circuit held that "the District Court was correct in holding that the private civil action, even couched in RICO terms, will not lie for

- 7 -

an alleged breach of the SCA." 941 F.2d at 1229. Here in contrast, plaintiffs' RICO claim does not rest on an alleged breach of the CAA, which does not provide any regulatory overview for fraud claims, let alone provide an exclusive remedy for such claims.

And in the third inapposite case cited by Bosch GmbH, the court explained that the plaintiff's "suit is, at its core, an attempt to use a fraud-predicated civil RICO claim to enforce regulatory provisions." *Brown v. First Tenn. Bank Nat'l Ass'n*, 753 F. Supp. 2d 1249, 1260 (N.D. Ga. 2009). In contrast, this Court has explained that, like in *Counts I* and *Duramax*, Plaintiffs "do not seek to set or enforce any emissions standards or obligations." Dkt. 69 at 18. This Court also explained that "even if Plaintiffs were no longer able to refer to Ford's alleged use of defeat devices, Plaintiffs could still succeed with their fraud claims. The true issue with regard to Plaintiffs' fraud claims is whether or not Ford materially deceived (under the various state laws) its consumers." *Id*. at 20–21.[9]

Bosch GmbH's next misleadingly argues that the RICO claim "falls outside the 'zone of interests' that Congress sought to protect in passing the CAA." Dkt.

---

[9] *See id*. at 22 ("The Court in *Duramax* said that in order for a car company to argue that claims arising from state consumer protection statutes are impliedly preempted by the CAA, a defendant would have to prove that Congress intended for the CAA to regulate the scope of a vehicle manufacturer's disclosure obligations to consumers. *Duramax*, 298 F.Supp.3d at 1064. Ford has not provided this Court with any legal authority to support that position. Plaintiffs' state law claims are not impliedly preempted by the CAA.").

- 8 -

153 at 11. Whether Plaintiffs' claims fall in the CAA's zone of interests is irrelevant, because Plaintiffs do not seek redress under the CAA precisely because it does not regulate fraud but instead preserves RICO fraud claims by means of its Savings Clause. What matters is that Plaintiffs' claims fall within the zone of interests of RICO and the mail and wire fraud statutes. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 645 (2008) (rejecting district court's holding that plaintiffs "are not in the class of individuals protected by the mail fraud statute, and therefore are not within the zone of interests that the RICO statute protects, because they were not recipients of the alleged misrepresentations and, at best were indirect victims of the alleged fraud") (internal quotation marks omitted).[10]

### 2. There is a direct relationship between Bosch GmbH's wrongful conduct and Plaintiffs' injury, as required for RICO Standing.

Bosch GmbH incorrectly argues that the indirect purchaser rule for non-fraud, antitrust cases applies to Plaintiffs' RICO fraud claim because they did not directly purchase their vehicles from Bosch GmbH. Dkt. 153 at 13–15. This Court has already rejected a variation of this argument by Bosch LLC. *See* Dkt. 69 at 48

---

[10] The final two cases briefly cited by Bosch GmbH are inapposite. In *Callahan v. A.E.V., Inc.*, 182 F.3d 237 (3d Cir. 1999), the plaintiff did not claim it was defrauded by defendant or that the defendant defrauded a regulatory board about a product in order to deceptively sell it to consumers. In contrast, Plaintiffs here allege they were defrauded apart from any fraud on the EPA and CARB. And in in the other case, the court held that "Plaintiffs were unable to cite any cases where patent or trademark infringement constituted mail or wire fraud." *See S. Snow Mfg. Co. v. SnoWizard Holdings, Inc.*, 912 F. Supp. 2d 404, 422 (E.D. La. 2012).

("Bosch asserts that even though Plaintiffs allege that Bosch LLC produced the Electronic Diesel Control Unit 17 and sold it to Ford, there were additional factors that substantially caused Plaintiffs' alleged injuries.").

Bosch GmbH's argument defies Sixth Circuit and Supreme Court guidance on RICO standing and causation: "Plaintiffs must show 'some direct relation between the injury asserted and the injurious conduct alleged.'" *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 487 (6th Cir. 2013) (quoting *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).[11] Bosch GmbH ignores both that test and the requirement that the RICO civil suit provision "is to be 'liberally construed to effectuate [the statute's] remedial purposes.'" *In re Classic Star*, 727 F.3d at 487 (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 498 (1985)).

Plaintiffs here meet those standards. Plaintiffs allege a direct connection between the fraudulent scheme and their injuries: (1) Defendants designed an engine that would pass emissions tests but release unreasonably high NOx in ordinary use; (2) Defendants made misleading claims and material omissions to the

---

[11] *See also In re ClassicStar*, 727 F.3d at 487 ("Plaintiffs need only show that the defendants' wrongful conduct was a substantial and foreseeable cause of the injury and the relationship between the wrongful conduct and the injury is logical and not speculative.") (internal quotation marks and citations omitted); *Crosby v. Twitter, Inc.*, 921 F.3d 617, 624 (6th Cir. 2019) ("we should evaluate proximate cause with a particular emphasis on the demand for some direct relation between the injury asserted and the injurious conduct alleged") (internal quotation marks and citations omitted).

public about their diesel engine and the vehicles' performance; and (3) as a result, Plaintiffs bought vehicles at a premium price not knowing that the vehicles were defective. ¶¶ 1–5, 13–22, 27–55, 59, 62, 64, 65–70, 249–285, 289, 321–342, 345–353, 357–366. So the overpayments were "'a substantial and foreseeable" result of Defendants' wrongful conduct, "and the relationship between the wrongful conduct and the injury is 'logical and not speculative.'" *In re ClassicStar*, 727 F.3d at 487. Plaintiffs' injuries flow directly from the acts of Defendants, and not indirectly from "the misfortunes visited upon a third person," *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992). Courts analyzing claims in defeat-device cases have uniformly reached the same conclusion. *See, e.g.*, *Duramax*, 298 F. Supp. 3d at 1075 ("This suit [involving Bosch GmbH] does not involve 'derivative or passed-on harm': all entities which conceivably contributed to Plaintiffs' injuries have been joined as parties.'") (citations omitted).[12]

---

[12] *See also In re Mercedes-Benz*, 2019 WL 413541, at *13–14; *Duramax*, 298 F. Supp. 3d at 1073–77; *FCA EcoDiesel*, 295 F. Supp. 3d at 968 ("[P]assed-on injury requires an examination of the relationship between different injured parties, not the relationship between a RICO plaintiff and different members of the RICO scheme." The law does not require that "each participant in a RICO enterprise must have a direct relationship with the plaintiff directly injured by that enterprise's conduct."); *id.* at 966–67 (conduct of Bosch and other diesel emission defendants directly caused plaintiffs' injuries); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices & Prods. Liab. Litig.*, 2017 WL 4890594, at *9 (N.D. Cal. Oct. 30, 2017) ("[W]hat matters, though, is … whether there is a 'sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury.'") (citing *Bridge*, 553 U.S. at 657).

So Bosch's argument that it "had no relation with" consumers, Dkt. 153 at 14, lacks merit. Dismissing this case because Plaintiffs did not purchase anything from Bosch GmbH would go against *Bridge*, in which the Supreme Court held that RICO's proximate-cause inquiry turns *not* on the relationship between the plaintiffs and the defendants but instead on whether "there is a sufficiently direct relationship between the defendant's wrongful conduct and the plaintiff's injury to satisfy the proximate-cause principles." 553 U.S. at 657–58. In *Bridge*, even though the plaintiffs were not the first in the causation claim, their "alleged injury—the loss of valuable liens—is the direct result of petitioners' fraud. It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens." *Id.* at 658. Similarly here, Plaintiffs' overpayments were the intended, foreseeable, and natural consequence of the fraudulent scheme.[13]

---

[13] The requirements for "antitrust injury" have "no analogue in the RICO setting." *Holmes*, 503 U.S. at 269 n.15. And, the Court has cautioned, "our use of the term 'direct' should merely be understood as a reference to the proximate-cause enquiry that is informed by the concerns set out in the text. We do not necessarily use it in the same sense as courts before us have and [we] intimate no opinion on results they reached." *Id.* at 272 n.20; *see also Israel Travel Advisory Serv., Inc. v. Israel Identity Tours*, 61 F.3d 1250, 1257 (7th Cir. 1995) ("[*Holmes*] observed that it did not mean to preclude all possibility of recovery for injury that was transmitted indirectly…."). Instead, "the infinite variety of claims that may arise [under RICO] make it virtually impossible to announce a black-letter rule that will dictate the result in every case" for determining whether an alleged RICO violation was the proximate cause of a plaintiff's injuries. *Holmes*, 503 U.S. at 272 n.20.

Bosch GmbH relies solely on inapposite cases in which the plaintiffs were not fraudulently induced to buy defective products. For example, the plaintiffs in *Apple Inc. v. Pepper*, 139 S. Ct. 1514 (2019), did not purchase defective products as a result of fraud. And *Apple* does not support Bosch GmbH's argument in any event, because the Court held that the plaintiffs did not seek derivative damages but instead properly sought "damages based on the difference between the price they paid and the competitive price," *id*. at 1525, as do Plaintiffs here.[14]

Bosch GmbH's argument conflates harms derived solely from injuries to a third party with harm from injuries to a plaintiff directly caused by a party who is a defendant and co-conspirator. Dkt. 153. at 14–15 & n.10. Rather than being derivative of harm to another party, Plaintiffs allege they are direct victims of Bosch GmbH's conduct—having overpaid for vehicles as a direct result of the RICO fraud—and there are no more directly affected plaintiffs waiting in the wings "to vindicate the law as private attorneys general" to recover any portion of the damages suffered by Plaintiffs based on the difference between the price they

---

[14] There is no merit to Bosch's argument that the "link between some Plaintiffs and Bosch GmbH" is "even more attenuated, as they purchased ***used*** cars from dealers or private sellers" so that their alleged injury is not only derivative of injury originally borne by the dealers, but also of injury passed on by previous owners." Dkt. 153. at 14 n.10. Not a single Plaintiff seeks passed-on damages; instead, as in *Apple*, each Plaintiff seeks "damages based on the difference between the price they paid and the competitive price," 139 S. Ct. at 1525, so that their damages do not derive from injuries suffered by others.

paid and the competitive price for their vehicles.

In another inapposite case cited by Bosch GmbH, the plaintiff consumers were "multiple purchasers down the distribution chain" in a case involving a scheme to "artificially inflat[e] the benchmark prices" for insulin products. *In re Insulin Pricing Litig.*, 2019 WL 643709, at *1 (D.N.J. Feb. 15, 2019). No claim of fraud was made, let alone that the plaintiffs were directly defrauded. Instead, "Plaintiffs have merely alleged a pass-through of the inflated price from one of the various intermediaries to the consumers. Such allegations cannot overcome an indirect purchaser rule challenge." *Id.* at *12. *Insulin* distinguished another RICO case, *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 804 F.3d 633 (3d Cir. 2015), on the ground that "the *Avandia* plaintiffs' cause of action was couched in the defendants' alleged failure to disclose known health risks of various drugs ultimately included in their formularies." 2019 WL 643709, at *9.[15]

---

[15] Additional cases cited by Bosch GmbH do not support its argument. *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 613–16 (6th Cir. 2004), held that employees who alleged an injury that was not passed on or derivative had standing to bring a RICO claim. Similarly, Plaintiffs here were the most direct and intended victims of Defendants' conduct, and their injuries are neither derivate nor passed on. *See Marrero-Rolon v. Autoridad de Energia Electrica de P.R.*, 2015 WL 5719801, at *8–9 (D.P.R. Sept. 29, 2015) (*Trollinger* held inapplicable where plaintiffs were RICO scheme's "most direct" and "intended victims" and where defendant was co-conspirator responsible for misconduct), *adopted*, 2016 WL 9459821 (D.P.R. Mar. 31, 2016). In another case cited by Bosch GmbH, *McCarthy v. Recordex Serv.*, 80 F.3d 842 (3d Cir. 1996), the plaintiffs did not claim they were defrauded *at all*, let alone that they bought a defective product as a result of the defendants' fraud. Instead, they solely sought damages that derived from their attorneys' alleged

Even were Third Circuit law applicable here, this case is like *Avandia*, not

*Insulin*, because Plaintiffs' claim is not based on passed-on injuries but instead is

"couched in the defendants' alleged failure to disclose known" defects in the

vehicles. Plaintiffs and the Class were directly injured in their property as a result

of Defendants' fraud, which caused them to overpay for the Class Vehicles.[16] This

and other courts in emissions-fraud cases have uniformly concluded that consumer

plaintiffs sufficiently allege a direct link between the wrongful conduct and their

injuries based on similar allegations of wrongful conduct. *See* Dkt. 69 at 49

("Plaintiffs have sufficiently demonstrated that there was a direct link between the

injuries that they allege they suffered and Bosch LLC's conduct.").[17]

### 3.    Plaintiffs adequately allege that Bosch GmbH engaged in a pattern of racketeering activity.

Bosch GmbH erroneously claims that Plaintiffs do not allege that it engaged

in a pattern of racketeering activity under RICO. Dkt. 153 at 15–20. Bosch GmbH

misapprehends the elements of RICO claims under § 1962(c) and (d). For liability

---

overpayment for photocopies as a result of defendants' "conspir[acy] to charge excessive prices for photocopies of medical records." *Id.* at 845.

[16] *See In re Volkswagen*, 349 F. Supp. 3d 881, 906 (N.D. Cal. 2018); *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Practices & Antitrust Litig.*, 336 F. Supp. 3d 1256, 1321–22, 1324–25 (D. Kan. 2018); *Willie McCormick & Assocs., Inc. v. Lakeshore Eng'g Servs., Inc.*, 2015 WL 5093785, at *5 (E.D. Mich. Aug. 28, 2015) (direct link between wrongful conduct and injuries, and fact that injury was not contingent on harm to another, supported RICO proximate cause).

[17] *See also In re Mercedes-Benz*, 2019 WL 413541, at *14; *FCA EcoDiesel*, 295 F. Supp. 3d at 967–68.

under § 1962(c), each defendant need only "participate, directly or indirectly," in the enterprise's affairs. As the Supreme Court has held, "the word 'participate' makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, … but *some* part in directing the enterprise's affairs is required." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (emphasis in original). And liability for a RICO conspiracy under §1962(d) may be imposed "even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense. The partners in the criminal plan must agree to pursue the same criminal objective and may divide up the work, yet each is responsible for the acts of each other." *Salinas v. United States*, 522 U.S. 52, 63–64 (1997).

Plaintiffs allege in detail that Bosch GmbH played not just "*some* part," but a crucial part in the enterprise's pattern of racketeering. As this Court explained in denying Bosch LLC's motion to dismiss, "But for Bosch LLC working with Ford to make the defeat devices, Plaintiffs would not have overpaid for the vehicles." Dkt. 69 at 49. And as Plaintiffs allege, the defeat device in all vehicles at issue "was manufactured by Bosch GmbH and sold to Ford. Bosch built the ECU hardware and developed the software running in the ECU. Bosch developed a 'function sheet' that documents the functional behavior of a particular release of the ECU firmware. All function sheets used in the Ford EDC, on information and belief, bear a 'Robert Bosch GmbH' copyright." ¶ 328. Moreover, Ford

"[d]esign[ed] in conjunction with Robert Bosch GmbH the Polluting Ford Vehicles with defeat devices." ¶ 338(a). "Without … Bosch's active involvement in developing and supplying the critical defeat devices for the Polluting Ford Vehicles, the Super Duty Diesel Fraud Enterprise's scheme and common course of conduct would not have been successful." ¶ 340.

Bosch GmbH ignores its crucial role in manufacturing the defeat devices for all vehicles at issue and instead makes the irrelevant argument that "Plaintiffs do not allege that Bosch GmbH, as a components supplier, participated in or had any involvement with Ford's subsequent marketing campaign for its cars." Dkt. 153 at 16. Plaintiffs need not allege that Bosch GmbH participated in every activity carried out by the members of the RICO enterprise; instead, its creation of the device defeat for all vehicles *alone* demonstrates its active participation in the pattern of all racketeering activity. As *Duramax* explained, "Bosch has provided no authority for the proposition that a RICO defendant may avoid liability simply by identifying a separate action by its codefendant which partially contributed to the plaintiff's injury (especially when, as here, the Plaintiffs allege that the RICO Defendants worked together to cause the injury). Such an assertion is facially absurd." 298 F. Supp. 3d at 1074–75.

Bosch GmbH next makes the irrelevant argument that "a scheme to obtain regulatory approvals is not one to obtain 'money or property' sufficient to support

- 17 -

a mail (and, by extension, wire) fraud claim." Dkt. 153 at 16. For that red herring, Bosch GmbH relies on an inapposite case, *Cleveland v. United States*, 531 U.S. 12 (2000). In *Cleveland*, the Supreme Court held that the defendant did not commit mail fraud because it did not obtain money or property from *anyone*. The government claimed only that the State "has a property interest in its video poker licenses." *Id*. at 21. The Court disagreed, holding that "a Louisiana video poker license in the State's hands is not 'property' under § 1341." *Id.* at 26–27.

*Cleveland* is fully consistent with Plaintiffs' RICO claims here. The object of Defendants' fraudulent scheme here was property in Plaintiffs' hands—the $8,400 overpayments. The fact that regulatory licenses or approvals are not property for the purposes of mail and wire fraud only serves to demonstrate that consumers, not the EPA or CARB, were the direct victims of Defendants' scheme. No such property interest was at issue in *Cleveland*. Bosch GmbH also misses the mark when it argues that "in *United States v. Sadler*, 750 F.3d 585, 590-91 (6th Cir. 2014), the Sixth Circuit relied heavily on *Cleveland* in overturning a wire fraud conviction." Dkt. 153 at 17 n.12. In *Sadler*, the Sixth Circuit explained that "[a]ll that the evidence shows is that Nancy paid full price for all the drugs she purchased and did so on time. How, then, did Nancy deprive the distributors of property?" 750 F.3d at 590. Here in contrast, Defendants deprived Plaintiffs of

- 18 -

money.[18]

Bosch GmbH relies on yet another inapposite case, *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393 (6th Cir. 2012). In *Heinrich*, the Sixth Circuit held that "any injuries [plaintiffs] may have suffered were not the direct result of the alleged fraudulent conduct. Rather, the false references helped put the Heinriches in a position to be defrauded by other, unrelated representations." *Id.* at 405. In contrast, Plaintiffs' injuries here were the direct result of the Defendants' fraudulent conduct, not other, unrelated representations.[19]

Bosch GmbH next erroneously asserts that Plaintiffs "have not alleged that any relationship or statement exists that could give rise to a duty on the part of Bosch GmbH to disclose information to indirect customers of Ford." Dkt. 153 at 19–20. In denying Bosch LLC's motion to dismiss, this Court has rejected its argument that "Plaintiffs must allege that Bosch LLC had an independent duty to

[18] Two more cases cited by Bosch GmbH (*see* Dkt. 153 at 17) are inapposite, because *no one* suffered injury to business or property. *United States v. Murphy*, 836 F.2d 248, 254 (6th Cir. 1988) ("Tennessee's right to accurate information with respect to its issuance of bingo permits constitutes an intangible right and thus the scheme and artifice as charged in the indictment … does not state a crime."); *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 226, 227 (S.D.N.Y. 2003) ("The Plaintiffs who allege reliance on fraudulent statement(s) of Defendants … allege that they suffered physical injuries, not injuries to business or property.").

[19] Bosch GmbH argues that "unlike the plaintiffs in *Waiting Angels*, Plaintiffs do not allege they were aware of any promotional activity by Bosch GmbH. *See* CAC ¶¶ 27-55." Dkt. 153 at 19. Bosch GmbH once again simply ignores that "[b]ut for Bosch LLC working with Ford to make the defeat devices, Plaintiffs would not have overpaid for the vehicles." Dkt. 69 at 49.

disclose information to them." Dkt. 69 at 43. This Court explained that the Sixth

Circuit has "repeatedly confirmed that concealment of material facts can constitute

a fraudulent scheme sufficient to establish RICO liability," so that "Plaintiffs were

not required to prove that Bosch LLC had a duty to disclose any information about

the defeat devices." *Id*. at 45–46.[20]

Bosch GmbH's only rejoinder is to ignore the Sixth Circuit cases cited by

this Court and argue that the Court "does not appear to have considered [*United*

*States v. Jamieson*, 427 F.3d 394, 415 (6th Cir. 2005)], which aligns with other

appellate decisions holding that an omission is not actionable absent a duty to

disclose." Dkt. 153 at 20 n.14. But *Jamieson* does not support Bosch GmbH's

argument. In *Counts*, the court rejected Bosch LLC's argument that *Jamieson*

"establishes that fraud by omission requires an affirmative duty to disclose

information." 2018 WL 5264194, at *7. The court explained that the "'simple

omission' alleged in this case is not 'independent of any other statements

encouraging trust and confidence in the defendant.' *Jamieson*, 427 F.3d at 415." *Id*.

---

[20] *See also Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 802 (6th Cir. 2012)
("As Plaintiffs have pled, Duke's [mail and wire] fraud was in asserting through
the mail that all customers had to pay 'mandatory and unavoidable' electricity
charges, implying that all customers paid the same rate (which they were required
to do under the RPA). Thus, Plaintiffs allege that Duke's non-disclosure of the side
agreements constitutes fraud."); *Duramax*, 298 F. Supp. 3d at 1086 ("to the extent
Defendants may have had no duty to disclose the operation of the Duramax
engine's emissions technology in the abstract, a duty arose when they created the
appearance that it was a 'clean diesel' engine").

at *8. The same is true here.[21]

### 4.      Plaintiffs allege a cognizable RICO injury.

Plaintiffs suffered an economic injury when they paid a "premium price" for Class Vehicles that were not delivered as promised. ¶¶ 27–41, 44–52, 289. Bosch GmbH concedes that this Court "held that Plaintiffs had adequately pled a RICO injury," Dkt. 153 at 21, but now asks the Court to reverse that ruling. But it offers only recycled arguments that this Court and others have routinely rejected in emissions-fraud cases. These arguments again fail.

Plaintiffs' alleged injuries are straightforward—they overpaid for their Class Vehicles when they bought them. The amount they overpaid (approximately $8,400) reflects the difference between what Ford charged for the Class Vehicles

---

[21] In a footnote, Bosch GmbH relies on three inapposite cases that involved pure omissions, not active concealment or half-truths. *See* Dkt. 153 at 20 n.14, Bosch first cites *United States v. Shields*, 844 F.3d 819 (9th Cir. 2016), which the Ninth Circuit distinguished in *United States v. Stewart*, 728 F. App'x 651 (9th Cir. 2018). *Stewart* held that "in a case involving half-truths, the duty to disclose arises from the truth half-spoken, not from a separate duty. *See United States v. Lloyd*, 807 F.3d 1128, 1153 (9th Cir. 2015). Thus, the jury did not need to find a separate duty to disclose." *Id.* at 654. Bosch GmbH also cites cases from the Second and Eleventh Circuits, but in both Circuits a duty to disclose arises in RICO cases involving half-truths or active concealment. *See Kemp v. AT&T*, 393 F.3d 1354, 1360 (11th Cir. 2004) ("'A duty to disclose can also arise in a situation where a defendant makes partial or ambiguous statements that require further disclosure in order to avoid being misleading.'") (citation omitted); *Kriss v. Bayrock Grp. LLC*, 2017 WL 1901966, at *2 (S.D.N.Y. May 8, 2017) (defendant had RICO duty to disclose information that "could not have been discovered through the exercise of ordinary intelligence because Defendants allegedly sought to conceal it from not only Plaintiffs and other investors but also government regulators").

and what it charged for comparable gasoline trucks that did not have hidden emissions-cheating technology. ¶ 13. In their motions to dismiss, Ford and Bosch LLC argued, as Bosch GmbH repeats here, that this overpayment or "premium price" theory of injury is too speculative because Plaintiffs purportedly cannot quantify their losses. *Cf., e.g.*, Dkt. 69 at 34–35 *with* Dkt. 153 at 20–22. This Court disagreed with that argument and—citing *Duramax* and *FCA EcoDiesel*, which rejected this same argument—concluded that "Plaintiffs' claims are premised on overpayment that occurred at the time of their injuries *and are not speculative*." Dkt. 69 at 37 (emphasis added).[22]

This conclusion remains correct, and Bosch GmbH's assertion that the Court "did not [previously] consider whether Plaintiffs' alleged overpayment injury … was speculative," Dkt. 153 at 21, is contradicted by the Order denying the prior motions to dismiss.[23] And Bosch GmbH's argument that $8,400 is an "impossibly speculative" amount of overpayment (Dkt. 153 at 31) is wrong, because the alleged

---

[22] Courts in emissions-fraud cases have repeatedly rejected this same argument, holding that overpayment injuries suffered at the time of purchase are cognizable RICO injuries. *See Bledsoe v. FCA US LLC*, 2019 WL 1379588, at *9 (E.D. Mich. Mar. 27, 2019); *In re Mercedes-Benz*, 2019 WL 413541, at *9–12; *Counts*, 2018 WL 5264194, at *3–5; *In re Volkswagen*, 349 F. Supp. 3d at 904–05; *FCA EcoDiesel*, 295 F. Supp. 3d at 959–61; *Duramax*, 298 F. Supp. 3d at 1067–73.

[23] *See* Dkt. 69 at 35 ("Courts have held that there is a distinction between damages theories where the (ascertainable and reasonably quantifiable) overpayment occurred at the time of injury and speculative damages theories which are contingent on some future event, lost profit, or unanticipated future expense.").

- 22 -

premium reflects the amount that "[*Defendant*] *itself* allegedly charged for a diesel engine knowing that it would not perform as represented" and is therefore not speculative or subjective. *Counts*, 2018 WL 5264194, at *5. Bosch offers no new authority—indeed, no authority at all—in its bid to reverse the Court's prior ruling on Plaintiffs' concrete and quantifiable overpayment injury. That bid should be rejected and the Court's prior ruling upheld.

Bosch GmbH's next RICO injury argument, which is similarly recycled from previous motions in this case, is a straw man. *Cf.* Dkt. 76 at 14–16 *with* Dkt. 153 at 22–24. Bosch incorrectly suggests that Plaintiffs assert a separate RICO injury "based on the loss of a supposed expectation regarding NOx emissions performance." Dkt. 153 at 22. Plaintiffs' RICO injuries are not based on any "expectation regarding … performance" but rather on the concrete amount they overpaid for their vehicles, due to Defendants' wrongful conduct. Contrary to Bosch GmbH's assertion, this injury is not dependent on some future event or on subjective expectations—Plaintiffs harm was fully realized *at the point of sal*e, when they purchased vehicles that *were not capable* of performing as represented but instead polluted at levels dramatically higher than a reasonable consumer would expect. *See, e.g.*, ¶ 15 ("if the emissions were as-promised, the advertised fuel economy and performance *could not be achieved*") (emphasis added). Bosch GmbH's attempt to distinguish *Reiter v. Sonotone, Corp.*, 442 U.S. 330, 342

- 23 -

(1979), *see* Dkt. 153 at 24, thus fails.

Bosch's reliance on several cases fails for the same reasons as before.[24] As explained in *Duramax* (cited by this Court in its previous Order), "[t]o the extent the rationale in *Ignition Switch Litigation* and *Tri–State Express* cannot be squared with the conclusion that Plaintiffs have alleged a RICO injury, the Court declines to follow their reasoning. Indeed, such a reading of those two cases appears to be incompatible with the Supreme Court's conclusions in *Reiter* and the Sixth Circuit's decision in [*Hofstetter v. Fletcher*, 860 F.2d 1079 (6th Cir. 1988)]."[25] *Duramax*, 298 F. Supp. 3d at 1073. This Court has reached the same conclusion as *Duramax*, and Bosch GmbH presents no reason for reversal of that decision.[26]

---

[24] *See Duramax*; *Tri-State Express, Inc. v. Cummins Engine Co.*, 2000 U.S. Dist. LEXIS 23564 (D.D.C. Sept. 11, 2000); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008); *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 3920353 (S.D.N.Y. July 15, 2016). Bosch GmbH's invocation of *Duramax* is particularly misleading because, as Plaintiffs noted in previous briefs addressing this same argument, Dkt. 80 at 26, immediately after the passage cited by Bosch LLC and Bosch GmbH, *Duramax* explained that "Plaintiffs' first alleged injury clearly suffices to create RICO standing" where they alleged to have "paid a premium of nearly $9,000, as GM charged more for its Duramax engine than a comparable gas car," which represented a "specific payment attributable directly to the vehicle component at issue which they opted to purchase on the basis of fraudulent conduct." *Duramax*, 298 F. Supp. 3d at 1071–72. The same conclusion applies to Plaintiffs' allegations here.

[25] *See also Counts*, 2018 WL 5264194, at *5 (adopting similar reasoning and noting that "two other district courts ha[d] rejected the injury analysis in both *Ignition Switch* and *McLaughlin*") (citing *Volkswagen*, 349 F. Supp. 3d at 905; *FCA EcoDiesel*, 295 F. Supp. 3d at 959–61).

[26] *See* Dkt. 69 at 35 ("there is a distinction between damages theories where the (ascertainable and reasonably quantifiable) overpayment occurred at the time of

Plaintiffs plead a cognizable RICO injury.

### III.   CONCLUSION

Bosch GmbH's motion to dismiss should be denied.

Dated: January 22, 2020

Respectfully submitted,

By: */s/ Steve W. Berman*
Steve W. Berman

E. Powell Miller
Sharon S. Almonrode
THE MILLER LAW FIRM PC
950 W. University Dr., Ste. 300
Rochester, MI 48307
Telephone: (248) 841-2200
Email: epm@millerlawpc.com
Email: ssa@millerlawpc.com

James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ 07068
Telephone: (973) 994-1700
Email: JCecchi@carellabyrne.com

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Email: steve@hbsslaw.com

David S. Stellings
LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone: (212) 355-9500
Email: dstellings@lchb.com

*Plaintiffs' Interim Co-Lead Counsel*

---

injury and speculative damages theories which are contingent on some future event, lost profit, or unanticipated future expense," and concluding that Plaintiffs' injuries here are the former).

- 25 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 22, 2020, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Steve W. Berman*
Steve W. Berman
